MARY J. ROSS *vs.* ARTHUR MICHAEL.
CHARLES ROSS *vs.* SAME.

Middlesex.    March 21, 1923. — July 6, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Assault. Evidence,* Relevancy and materiality. *Practice, Civil,* Exceptions. *Damages,* In tort.

At the trial of an action for an assault alleged to have been committed by the defendant upon the plaintiff, when he was serving as butler for the defendant, by threatening him with a knife, there was evidence tending to show that, in the evening after the alleged assault, the defendant called a policeman and in his presence told the plaintiff to leave the house immediately. The plaintiff was asked to tell the jury how he " felt humiliated by this assault," and answered, "Well, I felt that he disgraced me by bringing in the police and turning us out in the middle of the night and ruined my twenty-five years of good references, you might say." A motion by the defendant to strike out the answer was denied and the defendant excepted. *Held,* that the exception must be sustained, the answer of the plaintiff being immaterial and incompetent and prejudicial to the defendant.

An exception to the admission of a question and answer relating to whether a conversation was held by the witness must be overruled where it does not appear what the conversation was and the excepting party is not shown to have been harmed by the testimony.

At the trial of an action by a woman for assault committed by the defendant upon the plaintiff when she was in the employ of the defendant as cook, there was evidence tending to show that, having ordered the plaintiff from his premises, the defendant came "running down the front stairs just like a mad man, with a very red face and he pointed the revolver right in . . . [her] face . . . " telling her to " get right out of my house or I will shoot you dead." The defendant asked that a verdict be ordered in his favor because the threat to harm the plaintiff was conditional and there

was no present intention to harm her. The motion was denied. *Held*, that the jury could have found that an assault was committed if they found, as they were warranted in finding, that, acting reasonably, the plaintiff believed, notwithstanding the language used by the defendant, that she was then in great danger of immediate death or serious personal injury, and that she had a well grounded belief that he would then shoot her; and therefore the motion for the ordering of a verdict properly was denied.

In the actions by the butler and the cook above described, evidence of an order by the defendant to the plaintiffs to leave the house, given after the alleged assaults were committed, could not be considered in enhancement of damages.

TWO ACTIONS OF TORT for assaults alleged to have been committed on the plaintiffs, respectively, by the defendant. Writs dated December 12, 1918.

The actions were tried together before *Aïken*, C.J. Material evidence is described in the opinion. At the close of the evidence in the first action, the defendant moved that a verdict be ordered in his favor. The motion was denied. In that action the defendant then asked for the following rulings:

" 1. An assault is a present attempt to do a corporal injury to another, coupled with a present ability to commit the assault.

" 2. To constitute an assault there must be an unconditional threat to do harm to the plaintiff coupled with a present ability.

" 3. If the jury find the defendant said to Mary J. Ross, the plaintiff, ' You must get out of the house or I will shoot you (or shoot you dead) ' their verdict must be for the defendant.

" 4. On the evidence the defendant had the right to determine who should remain in his house."

Action on the foregoing requests is described in the opinion. In each action the jury found for the plaintiff in the sum of $500; and the defendant alleged exceptions, which after the resignation of *Aïken*, C.J., were allowed by *Lawton*, J.

*T. W. Proctor*, for the defendant.

*R. J. Lane*, for the plaintiffs.

CROSBY, J. These are actions of tort, tried together, for assaults alleged to have been committed by the defend-

ant. The plaintiffs are husband and wife, and at the time of the acts complained of were in the employ of the defendant — the husband as butler, the wife as cook. A verdict was rendered for the plaintiff in each case.

The defendant excepted to the admission of certain evidence, to the refusal of the trial judge to give certain rulings requested, and to portions of the charge.

There was evidence offered by the plaintiffs tending to show that at about ten o'clock in the evening of December 8, 1918, the male plaintiff and the defendant had some words respecting the condition of a lamp on a table beside the defendant in his library; that the former said " You seem to be nagging a great deal, Mr. Michael, lately. What seems to be the matter? " that the defendant replied, " Get out. That is all I want of you. Get right out; " that this plaintiff said, " Now, Mr. Michael, you have been nagging to Mary lately and she has spoken to me about it and I wish to say if our services don't suit you in any way, you don't need to get angry about it; " that the defendant's face became flushed, he shouted to the plaintiff to go, and reached over and grabbed an antique dagger with a long blade and followed him out of the library through the hall and into the dining room; that the defendant then ran upstairs to his bedroom and obtained a loaded revolver, and while he was coming down the stairway the female plaintiff came from the kitchen and said to him " What is the matter, Mr. Michael? " that he said, " Mary, get right out of my house or I will shoot you dead; " that " he stood on the stairway with the revolver pointing right between her eyes; " that " he repeated that twice about shooting her dead; " that later both plaintiffs retired to the rear of the house; that the defendant telephoned for a policeman, who arrived some time afterwards, and the defendant then in the presence of the officer told the male plaintiff that he and his wife must leave the house immediately.

We will consider only the exceptions which have been argued; the others are treated as waived.

1. The husband was asked on direct examination to " Tell the jury how . . . [he] felt humiliated by this as-

sault." His reply was: "Well, I felt that he disgraced us by bringing in the police and turning us out in the middle of the night and ruined my twenty-five years of good references, you might say." The defendant asked to have the answer stricken out and excepted to the refusal of the court to do so.

The plaintiff was entitled to recover as an element of damages for the humiliation, indignity and injury to his feelings, *Smith* v. *Holcomb*, 99 Mass. 552; *Morgan* v. *Curley*, 142 Mass. 107; *Burns* v. *Jones*, 211 Mass. 475; but his damages were limited to the proximate results of the assault. The policeman was called after the alleged assault was over, the defendant violated no legal duty which he owed to either of the plaintiffs by such action, and it properly could not be considered by the jury in estimating damages. He had a right to order the plaintiffs to leave his house and it was their duty to comply with the order; what his motive was in so doing was wholly immaterial. *Bruce* v. *Priest*, 5 Allen, 100. We are of opinion that the further answer of the plaintiff that he was humiliated on account of the loss of twenty-five years of "good references" was also incompetent: it had no bearing whatever upon the question of damages. We cannot say that its admission was not prejudicial to the rights of the defendant; accordingly, the exception to the refusal to strike out the answer must be sustained. *Brown* v. *Cummings*, 7 Allen, 507. *Miller* v. *Curtis*, 158 Mass. 127, 132.

2. The question put to the witness Butler, the defendant's gardener, by the plaintiff, "Did you say anything about Mrs. Ross staying in your premises that night?" was not answered. The further question, "Did you have a talk with anybody about that?" was answered in the affirmative. The exception to this question cannot be sustained. It does not appear what the conversation was or whom it was with. Neither the question nor the answer was prejudicial to the defendant.

3. At the close of the evidence the defendant moved that a verdict be ordered in his favor in the first action on the ground that the threat to shoot the female plaintiff was

conditional upon her refusing to leave the house and for that reason there was no present intention to harm her. The presiding judge gave the jury the following definitions of an assault: " Any intent, any offer to do harm immediately accompanied by ability to do harm, is an assault. . . . Any threatening gesture showing in itself or by words accompanying it an immediate intention coupled with present ability to do bodily harm to another, is an assault."

Where an overt act is accompanied by a threat to do violence in case a condition imposed by the actor is not complied with, such act will not constitute an assault if it appears that there is no present purpose to do harm and the circumstances are such that the person threatened must have known that no present assault was intended. *Commonwealth* v. *White*, 110 Mass. 407.

Although the threat of the defendant, if believed, was to the effect that he would kill the wife unless she left the house immediately, it does not follow that the jury should have been directed to find for the defendant in her case. She testified that when the threat was made the defendant was " running down the front stairs just like a mad man, with a very red face and he pointed the revolver right in . . . [her] face . . . ." In these circumstances the jury could have found that, acting reasonably she believed, notwithstanding the language used by him, she was then in great danger of immediate death or serious personal injury, and that she had a well grounded belief that he would then shoot her. Upon this branch of the case the judge correctly instructed the jury as follows: " If a revolver was used in such a manner by the defendant Michael as to create in Mary a well grounded fear of personal injury, an assault was committed. If she did not have a well grounded fear then there was no assault. If the words claimed to have been used by the defendant Michael, ' Mary, get out of the house or I will shoot you dead,' amounted to a denial of any present purpose to do harm, or were used under such circumstances that Mary must have known that no present assault was intended, then the act was not an assault." The request to direct a verdict for the defendant in the wife's

case was rightly denied, and the exception to the part of the charge above quoted cannot be sustained. *State* v. *Mitchell*, 139 Iowa, 455, 461.

4. The exception to the refusal to give the defendant's first, second and third requests for the reasons previously stated cannot be sustained. The first in substance was given.

5. The defendant's fourth request was that " On the evidence the defendant had the right to determine who should remain in his house." While the jury were instructed in accordance with the terms of the request, they were also told in this connection that if there had been an unjustifiable assault committed by the defendant, and there was nothing to indicate a likelihood of further disturbance on the part of the husband, the conduct of the defendant in causing him to leave the house could be taken into account in awarding damages to him. The assault being at an end the defendant had a right to order the plaintiffs from his house and such order properly could not be considered for the purpose of enhancing damages.

It results that in each case the entry must be

*Exceptions sustained.*