# United States Court of Appeals
## For the First Circuit

No. 01-1862

NEAL DAVIGNON AND PATRICIA KELLEY,

Plaintiffs-Appellees/Cross-Appellants,

AMANDA DAVIGNON AND CHELSEA DAVIGNON,

Plaintiffs-Appellees,

v.

KARL D. CLEMMEY AND KARL D. CLEMMEY, JR.,

Defendants-Appellants/Cross-Appellees,

TOWN OF MANSFIELD, MASSACHUSETTS,
ARTHUR O'NEIL, ETC.

Defendants-Appellees,

CLEMMEY, INC., ET AL.,

Defendants.

No. 02-1293

NEAL DAVIGNON AND PATRICIA KELLEY,

Plaintiffs-Appellees/Cross-Appellants,

AMANDA DAVIGNON AND CHELSEA DAVIGNON,

Plaintiffs-Appellees,

v.

KARL D. CLEMMEY AND KARL D. CLEMMEY, JR.,

Defendants-Appellants/Cross-Appellees,

———————

TOWN OF MANSFIELD, MASSACHUSETTS,
ARTHUR O'NEIL, ETC.

Defendants-Appellees,

———————

CLEMMEY, INC., ET AL.,

Defendants.

———————

No. 02-1346

NEAL DAVIGNON AND PATRICIA KELLEY,

Plaintiffs-Appellees/Cross-Appellants,

———————

AMANDA DAVIGNON AND CHELSEA DAVIGNON,

Plaintiffs-Appellees,

v.

KARL D. CLEMMEY AND KARL D. CLEMMEY, JR.,

Defendants-Appellants/Cross-Appellees,

———————

TOWN OF MANSFIELD, MASSACHUSETTS,
ARTHUR O'NEIL, ETC.

Defendants-Appellees,

2

CLEMMEY, INC., ET AL.,

Defendants.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

_____

Before

Torruella, Circuit Judge,

Cyr and Stahl, Senior Circuit Judges.

_____

Michael J. Traft, with whom Carney & Bassil, P.C. was on brief for defendants-appellants.

Leonard H. Kesten, with whom Deidre Brennan Regan, Patricia Malone Campbell, and Brody, Hardoon, Perkins & Kesten were on brief for plaintiffs-appellees and defendants-appellees.

_____

March 4, 2003

_____

**CYR**, **Senior Circuit Judge**.  Defendants Karl D. Clemmey ("Karl") and Karl D. Clemmey, Jr. ("Dan") appeal from a district court judgment, entered following a jury verdict, directing them to pay $2,850,000 in damages to Neal Davignon, Patricia Kelley, and their two minor children, for intentional infliction of emotional distress, assault and battery, and various violations of their civil rights.  In turn, Davignon and Kelley cross-appeal from a district court ruling that their jury verdict against Karl Clemmey, totaling $2,000,000, for intentional infliction of emotional distress, is barred by <u>res</u> <u>judicata</u>.  We affirm the jury verdict.

I

<u>BACKGROUND</u>

The relevant background facts are recited in the light most consistent with the jury verdict.  See <u>Quint</u> v. <u>A.E. Staley Mfg. Co.</u>, 172 F.3d 1, 9 (1st Cir. 1999).  On January 9, 1998, Karl and Dan Clemmey, owners of Clemmey Auto Body in Mansfield, Massachusetts, abruptly discharged their mechanic, Neal Davignon, physically assaulted him, and thereafter threatened his life and the lives and physical safety of his family.  At the time, Davignon, Patricia Kelley, and their two minor children were tenants in a residence owned by Karl Clemmey's real estate company — 360 Chauncey Street LLC.

Twenty minutes after he was fired, Davignon returned to the auto body shop, with Kelley and their children, in order to

4

retrieve some personal tools which had been wrongfully confiscated from Davignon by the Clemmeys during the earlier assault. After Dan Clemmey refused to allow Davignon to enter, claiming that Davignon had assaulted his father — Karl Clemmey — Kelley and the children left in tears to seek police assistance. Subsequently, Dan Clemmey advised the police officer that Karl Clemmey had decided not to press assault charges against Davignon and Kelley. Thereafter, Neal Davignon signed an assault-and-battery complaint against Karl Clemmey.

One week later, the Clemmeys commenced a long and relentless campaign of harassment and intimidation against Davignon and Kelley, beginning with their filing of criminal charges of assault and threats of arson. Subsequently, Karl Clemmey actively opposed Davignon's pending claim for unemployment compensation. Additionally, Karl Clemmey's real estate company, 360 Chauncey Street LLC, commenced eviction proceedings in state housing court against Davignon and Kelley. Davignon and Kelley counterclaimed for intentional infliction of emotional distress and thereafter included Karl Clemmey as a party defendant. Ultimately, in July 1998, Davignon, Kelley, and 360 Chauncey Street LLC entered into an Agreement for Judgment, which ceded possession of the leased premises to 360 Chauncey Street LLC, effective October 1, 1998, and stated that "the parties agree to waive all claims and counterclaims regarding this matter with prejudice."

5

Meanwhile, the Clemmeys, acting in concert, repeatedly intimidated and harassed the Davignons from February to August of 1998. For instance, while Davignon was visiting a friend at another auto repair garage, he observed that Karl Clemmey was taking his photograph. On the same occasion, Karl Clemmey warned Neal Davignon that no unemployment-compensation hearing would ever be held because "[y]ou'll be dead by then, you and your family."

In due course, Neal Davignon reported these threats to the Mansfield Police Department. Whereupon, Karl Clemmey was arrested and charged with the January 9 assault, and the state court entered a "stay-away" order as a condition of bail. Thereafter, Karl Clemmey submitted several additional false criminal complaints against Davignon, alleging assault and threatened assault.

Another witness saw Dan Clemmey break open a trash bag and strew its contents over the Davignons' lawn. In a similar vein, Patricia Kelley observed as Karl Clemmey drove past the Davignon residence. Later, upon returning home from an errand, Kelley found that the front door had been broken. On yet another occasion, a Mansfield police officer saw Karl as he was driving by the Davignon home. By way of further harassment, Karl falsely reported to the Mansfield Fire Department that the Davignons were storing explosives and other hazardous materials at their home.

Upon investigation, the latter allegation proved to be unfounded as well.

In April 1998, an anonymous telephone report was received by the Massachusetts Department of Social Services, to the effect that Davignon and Kelley were abusing and/or neglecting their children. Following an investigation, which included interviews of the Davignon children, the allegations were determined to have been unfounded.

On several other occasions, Patricia Kelley and another person witnessed the Clemmeys surveilling the Davignon residence from their parked car. In August 1998, Davignon saw Karl Clemmey as he was driving away from the Davignon residence, and immediately thereafter found the rock which had been thrown through the window of his residence moments earlier. On yet another occasion, Karl Clemmey brought his car to a stop on the street beside the Davignon residence and (i) called out to the Davignon children: "Assholes"! and (ii) ranted that their parents were "pieces of shit." These outbursts brought the Davignon children to tears.

Subsequently, Karl Clemmey was convicted in state court for having assaulted Davignon on January 9, 1998; at the same time, Kelley was acquitted of the charge that she had assaulted Dan Clemmey. Thereafter, the numerous remaining criminal complaints brought by the Clemmeys against Davignon and Kelley were dropped.

7

In September 1999, Davignon, Kelley, and their children commenced the instant action against the Clemmeys in the United States District Court for the District of Massachusetts, demanding damages for (i) assault and battery; (ii) intentional infliction of emotional distress; and (iii) various civil rights violations. The Clemmeys counterclaimed against Davignon and Kelley, and instituted a cross-claim against the Town of Mansfield and its police chief for facilitating Davignon's and Kelley's alleged harassment of the Clemmeys.[1] Following the nine-day trial, the jury awarded Davignon $350,000 on the assault and battery charge; as well as $1,000,000 each to Davignon and Kelley, and $1,250,000 to each Davignon child, on their respective claims for intentional infliction of emotional distress and civil rights violations.

On June 1, 2001, at the behest of Davignon and Kelley, the district court certified its partial judgment as final, pursuant to Federal Rule of Civil Procedure 54(b), and the Clemmeys timely filed their notice of appeal. On June 11, the district court extended the time for submitting applications for counsel fees, as well as motions for judgment as a matter of law, new trial, and remittitur.

---

[1]Following their appeal, the Clemmeys' cross-claim against the Town was dismissed by the district court as moot, pursuant to Federal Rule of Civil Procedure 16(c). The Clemmeys contend on appeal that we must reverse the Rule 16(c) dismissal in the event we determine that a new trial is warranted on the Clemmeys' claims. As we reach no such conclusion, see infra, their contention need not be addressed.

8

The Clemmeys did not file their post-trial motions until June 29, more than ten days after the entry of final judgment on June 1.

Although the district court rejected the Clemmeys' motions for new trial and remittitur, it vacated the $1,000,000 jury awards to Davignon and Kelley for intentional infliction of emotional distress as well as various civil rights violations. The district court determined that these claims had been fully litigated and waived by Davignon and Kelley pursuant to the July 1998 Agreement for Judgment in the housing-court eviction proceedings, which included a release stating that "the parties agree to waive all claims and counterclaims regarding this matter with prejudice."

The Clemmeys now appeal from the district court rulings which rejected their post-trial motions. Davignon and Kelley cross-appeal from the district court order which vacated their respective $1,000,000 awards for intentional infliction of emotional distress and various civil rights violations.

## II

## DISCUSSION

### A. The Clemmey Appeal

#### 1. Federal Rule of Evidence 803(4)

The district court permitted Jeffrey Parks — a family therapist and social worker not licensed to practice medicine — to testify concerning statements made to him by the Davignons during family-therapy sessions relating to the extreme emotional distress

9

experienced by the Davignon children.[2]  The Clemmeys contend that the district court erred in permitting Parks to testify regarding these statements because (i) Federal Rule of Evidence 803(4) provides an exception to the hearsay rule only for those statements made "for the purpose of medical diagnosis," whereas (ii) the plaintiffs consulted Parks for generalized advice on family problems, rather than to facilitate contemporaneous or subsequent treatment by a medical professional for any particular illness or disease.

Normally, "proper interpretation of the Federal Rules of Evidence [presents] a question of law and is reviewed <u>de novo</u>, whereas the application of [a particular rule of evidence] . . . is reviewed under an abuse-of-discretion standard."  <u>Crowley</u> v. <u>L.L. Bean, Inc.</u>, 303 F.3d 387, 394 (1st Cir. 2002) (citation omitted). The Clemmeys failed to assert any objection at the time Parks testified.  Moreover, their pretrial motion <u>in limine</u> was insufficient as well.  See <u>Varano</u> v. <u>Jabar</u>, 197 F.3d 1, 4 (1st Cir. 1999) (noting that objection asserted by motion <u>in limine</u> does not

---

[2]There are four elements to an intentional-infliction claim under Massachusetts law:  (i) defendant intended to inflict emotional distress or knew or reasonably should have known that emotional distress was likely to result from such conduct; (ii) the conduct was "extreme and outrageous," "beyond all possible bounds of decency," and "utterly intolerable in a civilized community"; (iii) the defendant's conduct proximately caused plaintiff's emotional distress; and (iv) the distress was so "severe that no reasonable man could be expected to endure it."  <u>Agis</u> v. <u>Howard Johnson Co.</u>, 355 N.E.2d 315, 318-19 (Mass. 1976) (citations omitted).

preserve evidentiary challenge absent contemporaneous objection at trial).  Consequently, we review for plain error only.  We discern none.  See Linn v. Andover Newton Theolog. Sch., Inc., 874 F.2d 1, 3 (1st Cir. 1989) ("We have stated repeatedly that absent extraordinary circumstances, we will not in a civil case excuse a party's failure to make a contemporaneous objection [to hearsay evidence].") (emphasis added).[3]

## 2.   **The Jury Instruction**

The district court instructed the jury that a knowing violation of the state-court restraining order by the Clemmeys would be sufficient, "standing alone," to demonstrate "outrageous conduct," an essential element of the claim for infliction of

---

[3]The ambit of Rule 803(4) is not limited to statements made to a licensed physician, but instead may encompass those made to social workers, provided that the declarant intended to procure medical treatment.  See Navarro de Cosme v. Hospital Pavia, 922 F.2d 926, 933 (1st Cir. 1991).  Here, the plaintiffs sought Parks' counsel in order to address mental-health issues associated with the campaign of harassment which the Clemmeys conducted against them and their children.

The Clemmeys belatedly attempt to distinguish Navarro, based on legal arguments whose correctness is not remotely obvious.  For instance, they urge that these statements should have been excluded from evidence because the declarants (viz., the Davignons) had a compelling motive to lie.  However, the district court allowed Park to testify only to statements the Davignons made prior to this litigation.  Similarly, the Clemmeys cite child-sex-abuse cases, in which various courts have refused to admit parental statements to medical doctors who diagnosed physical abuse.  However, those cases are based on the theory that a parent who abuses his or her own child may harbor a strong motive to mislead the doctor.  See, e.g., United States v. Yazzie, 59 F.3d 807, 813 (9th Cir. 1995).

11

emotional distress.  See supra note 2.[4]  The Clemmeys maintain that the challenged instruction misstates Massachusetts law.  Jury instructions are reviewed de novo.  See Crowley, 303 F.3d at 394.

A jury instruction, duly objected to, constitutes reversible error only if it (i) is "misleading, unduly complicating, or incorrect as a matter of law," id. (citation omitted); and (ii) cannot be considered harmless, viz., as adversely affecting the jury verdict and the "substantial rights" of the objecting party, see Romano v. U-Haul Int'l, 233 F.3d 655, 665 (1st Cir. 2000).  Absent a duly asserted objection at trial, however, an appellant may prevail only by establishing "plain error," viz., by demonstrating that (i) the instruction constituted error as a matter of law; (ii) the error was plain; (iii) likely altered the outcome; and (iv) threatened the fairness, integrity or public reputation of the judicial proceeding.  See Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co., 295 F.3d 68, 80 (1st Cir. 2002).

---

[4]The challenged instruction stated, in pertinent part:

> [If Karl Clemmey] knew there was a[] [stay-away] order and that he intentionally violated it, I'm telling you that that's enough under intentional infliction of emotional distress standing alone because the orders of the state court are expected to be obeyed.  Now that doesn't say that there's damages.  The violation would have to be the proximate cause of this severe emotional distress.

12

We need not consider whether the instant jury instruction constitutes a correct statement of Massachusetts law,[5] nor whether the Clemmeys adequately preserved the present claim for appeal,[6] inasmuch as the record on appeal discloses beyond any genuine doubt that the putative error was neither plain nor harmful, given that it almost certainly did not affect the verdict. The Clemmeys maintain, for example, that the jury may have found them liable based merely on some isolated and relatively innocuous violation of the "stay-away" order, such as Karl Clemmey driving by the Davignon home on a single occasion. Of course, appellants conveniently overlook the fact that the jury was explicitly charged with

---

[5]We note, however, that the validity of the Clemmeys' legal thesis is hardly self-evident. The Clemmeys cite cases which hold that a violation of a statute does not itself establish a negligence claim per se, but rather that it is one factor the factfinder may consider. See Bennett v. Eagle Brook Country Store, Inc., 557 N.E.2d 1166, 1168 (Mass. 1990). However, the Clemmeys cite (and we have found) no Massachusetts case which holds that the same rule applies to (i) a violation of a court order; or (ii) a claim for intentional infliction of emotional distress. Cf., e.g., Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 697 (9th Cir. 2001) (en banc) (holding that conduct which violates California penal law is "per se outrageous" for purposes of intentional-infliction claim), cert. denied, 534 U.S. 1078 (2002).

[6]During the precharge conference, the Clemmeys lodged no objection when the district court announced its intention to give this jury instruction. Tr. VIII, at 195-96. Following the jury charge, however, counsel stated: "Objection for the record to the instruction that violation of the stay-away order is per se emotional distress." Tr. IX, at 108. A party will be deemed to have waived objection to a jury instruction unless, prior to the jury deliberations, it "'stat[ed] distinctly the matter objected to and the grounds of the objection.'" Seahorse Marine Supplies, 295 F.3d at 79 (emphasis added; citation omitted).

assessing the outrageousness of the Clemmeys' conduct in determining the severity of the injury proximately caused to the Davignons, hence the amount of damages. Thus, the district court explicitly instructed the jury: "The violation [of the stay-away order] would have to be the proximate cause of this severe emotional distress." (Emphasis added.)

Given the $4.5 million jury award for intentional infliction of emotional distress, we are entirely confident that the jury did not opt to rely upon any one innocuous drive-by. Instead, as the trial outcome turned almost entirely upon the Clemmeys' credibility vel non, the jury in all likelihood determined that appellants' well-documented, extensive campaign of harassment readily rose to the level of "outrageous conduct," resulting in severe emotional injury to the Davignon family. Accordingly, viewed in context, any instructional error was harmless.

## 3. The Sufficiency of the Evidence

### a. Appellate Jurisdiction

The Davignons contend that we lack jurisdiction of the Clemmeys' challenge to the sufficiency of the evidence supporting the jury verdict, given that the Clemmeys failed to submit their Rule 50 and Rule 59(e) motions within ten days after entry of the final judgment on June 1, 2001. See Vargas v. Gonzalez, 975 F.2d 916, 917 (1st Cir. 1992) (per curiam) (noting that district court lacks jurisdiction to extend "mandatory" ten-day window prescribed

14

by Fed. R. Civ. P. 6(b)).  The Clemmeys respond that we may excuse their tardy motions under the "unusual circumstances" exception, see Thompson v. INS, 375 U.S. 384, 398-99 (1964) (per curiam), due to their detrimental reliance upon the specific, albeit mistaken, assurance by the district court that their motions were not untimely.[7]  Their suggestion is problematic for several reasons.

First, the viability of the Thompson doctrine remains in considerable doubt, see, e.g., Osterneck v. Ernst & Whinney, 489 U.S. 169, 178-79 (1989); United States v. Heller, 957 F.2d 26, 28 (1st Cir. 1992) (noting that Thompson "may be on shaky ground"); see also Arnold v. Wood, 238 F.3d 992, 996 (8th Cir.), cert. denied, 534 U.S. 975 (2001), most notably as concerns its application to motions submitted under Rules 50 and 59(e).  See Weissman v. Dawn Joy Fashions, Inc., 214 F.3d 224, 231 (2d Cir. 2000) (holding that Thompson applies exclusively to timeliness of notices of appeal).  Second, unlike the situation in Thompson, the sole "assurance" given the Clemmeys by the district court was implicit at most, in that the district court simply granted, by endorsement, the joint motion of the parties for an extension.  Although we have not determined whether such an endorsement, standing alone, constitutes an "assurance" upon which an appellant reasonably may rely, but see

---

[7]We reject their alternative argument that the judgment entered on June 1 was not "final."  The district court explicitly certified its judgment as final, pursuant to Federal Rule of Civil Procedure 54(b), and the Clemmeys thereafter lodged their notice of appeal from that judgment.

Scola v. Beaulieu Wielsbeke, N.V., 131 F.3d 1073, 1075 (1st Cir. 1997) (noting, in dicta, that this proposition is "very dubious"), other courts of appeals have been unreceptive. See, e.g., Rhoden v. Campbell, 153 F.3d 773, 774 (6th Cir. 1998); Endicott Johnson Corp. v. Liberty Mut. Ins. Co., 116 F.3d 53, 57 (2d Cir. 1997). Finally, even assuming that the district court's endorsement did not itself give rise to "unique circumstances," the Davignons acquiesced in its grant of the extension. See, e.g., Weissman, 214 F.3d at 232 (holding that, despite absence of "unique circumstances," opposing party, by failing to oppose time extension, waived nonjurisdictional requirement that appellant renew its Rule 50 motion after trial).

Given the enigmatic nature of the "unique circumstances" doctrine, and our determination that the sufficiency challenges asserted by the Clemmeys fail on the merits, see infra, we bypass the jurisdictional issue, and turn to the substance of their appeal. See United States v. Woods, 210 F.3d 70, 74 n.2 (1st Cir. 2000) (noting that timely notice of appeal is not an Article III requirement, thus does not implicate Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998)); Kelly v. Marcantonio, 187 F.3d 192, 197 (1st Cir. 1999) (holding that appellate court remains free to bypass problematic jurisdictional issue, provided it does not implicate Article III "case and controversy" requirement) (distinguishing Steel Co.).

16

### b. __The Assault and Battery Verdict for Neal Davignon__

The Clemmeys contend that the $350,000 damages award to Neal Davignon, arising from the assault and battery by Karl Clemmey on January 9, 1998, is excessive, in that (i) Davignon established at most that he sustained but minor physical injuries (e.g., bruised ribs), as well as little or no lost income; and (ii) the jury may have compensated Davignon separately — for the emotional injuries resulting from the assault — under the Davignon intentional-infliction-of-emotional-distress count.  The Clemmeys seek either a new trial or a remittitur.

A district court ruling rejecting a motion for new trial is reviewed only for abuse of discretion.  See Marrero v. Goya of P.R., Inc., 304 F.3d 7, 14 (1st Cir. 2002).  We accord considerable deference to the trial court's "greater ability to understand the scope of the evidence presented before it and to judge the credibility of th[e] witnesses." MacQuarrie v. Howard Johnson Co., 877 F.2d 126, 132 (1st Cir. 1989).  Furthermore, new-trial motions predicated on an insufficiency of evidence cannot prevail unless we determine the verdict to have been "'against the clear weight of the evidence such that upholding [it would] result in a miscarriage of justice.'"  Marrero, 304 F.3d at 14 (citation omitted); Hendricks & Assocs., Inc. v. Daewoo Corp., 923 F.2d 209, 217 (1st Cir. 1991) (noting double-layered deference accorded by courts of appeals —

17

first to jury, then to trial judge — in appeals from denials of Rule 59 motions).

A district court ruling rejecting a motion for remittitur is reviewed for abuse of discretion. See Trull, PPA v. Volkswagen of Am., Inc., 311 F.3d 58, 67 (1st Cir. 2002). The task of estimating money damages, especially intangible, noneconomic loss, constitutes a core jury function. Id. Thus, in the instant case appellants face a "formidable" burden, since they must demonstrate that the district court abused its discretion in determining that the jury verdict (i) does not exceed "any rational appraisal or estimate of the damages that could be based on the evidence before the jury"; and (ii) is not "'grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand.'" Id. (citations omitted).

An abundance of evidence enabled the jury rationally to conclude that Neal Davignon sustained severe physical and emotional injury as a consequence of the Clemmeys' brutal assault on January 9, 1998. Well known for his temper, enraged and unprovoked, Karl Clemmey abruptly fired Davignon, shoved him, pinned him against a van, insulted him (e.g., "You're so f---ing stupid"); threatened him and his family with bodily harm (e.g., "You're a f---ing deadman," and "I'm going to stuff you in a trunk so you never see the light of day."); misappropriated Davignon's work tools and other personal belongings; held him from behind with a tire iron, while using it

18

to lift him off the floor by the neck and chest, swinging him from left to right; threatened to break his back "so you never work again"; and finally struck Davignon in the face with the tire iron.

The version of these events tendered by the Clemmeys was quite different, of course, but both the jury and the district court credited the Davignon evidence. Thus, the suddenness and brutality of the assault, precipitated principally by Karl Clemmey's unprovoked rage against Davignon and his family, amply supported the jury finding that much of the emotional trauma sustained by Davignon proximately resulted from the physical assault, as distinct from the trauma caused by the Clemmeys' ensuing campaign of harassment, thereby precluding any ruling on appeal that the $350,000 jury award was either grossly excessive or shocking to the conscience. See Trull, 311 F.3d at 67; see also Davis v. DelRosso, 359 N.E.2d 313, 316 (Mass. 1977) (rejecting further remittitur based on argument that assault verdict should be "measured by reference only to the physical damage to plaintiff," and not to "the shock and humiliation of a sudden deliberate assault"); Ross v. Michael, 140 N.E. 292, 293 (Mass. 1923) (noting assault victim was "entitled to recover as an element of damages for the humiliation, indignity, and injury to his feelings").

The Clemmeys contend as well that the damages awarded in relation to Karl's assault upon Davignon must be set aside, since the jury may have compensated Davignon for the same injuries in its

19

discrete award for intentional infliction of emotional distress. The district court instructed the jury to indicate, on its special verdict form, whether and to what extent the mental and emotional damages sustained by Davignon, due to the Clemmeys' assault, overlapped with the damages awarded for intentional infliction of emotional distress. The Clemmeys neither objected nor proposed an alternative instruction. But cf., e.g., O'Connell v. Chasdi, 511 N.E.2d 349, 350 (Mass. 1987) ("In response to a special question, the jury indicated that the damages awarded for intentional infliction of emotional distress included the amount awarded for assault and battery."). Moreover, on the verdict form in the instant case, the jury explicitly noted: "no overlap."

### c. **The Verdict for the Davignon Children**

The Clemmeys contend that the district court erred in declining to enter judgment, as a matter of law, against the Davignon children in relation to their claim for intentional infliction of emotional distress, in that (i) the children's counsel failed to mention or describe, during opening statement, any damages sustained by the children; and (ii) the children adduced no evidence that they were present during most of the alleged harassment, so as to have experienced the requisite "direct impact" of any such harassment.

Normally, a district court order rejecting a Rule 50(b) motion is reviewed de novo, and is to be sustained unless the

20

evidence adduced at trial permitted but one conclusion — that the verdict simply cannot stand. See Jarrett v. Town of Yarmouth, 309 F.3d 54, 59 (1st Cir. 2002). In order even to qualify for such deferential review, however, appellants were required to preserve their arguments by (i) submitting timely Rule 50 motions at the close of evidence; (ii) renewing their motions following the jury verdict; and (iii) identifying with sufficient particularity the legal theories supporting their motions. See, e.g., CMM Cable Rep, Inc. v. Ocean Coast Props., Inc., 97 F.3d 1504, 1530-31 (1st Cir. 1996). Absent such compliance, our review simply contemplates the basic inquiry as to "'whether the record reflects an absolute dearth of evidentiary support for the jury's verdict'"; and the district court will be reversed "sparingly," that is, only where its ruling is "obviously insupportable." Udemba v. Nicoli, 237 F.3d 8, 13-14 (1st Cir. 2001) (citations omitted).

As appellants did not broach their first contention — viz., that the children's attorney failed to mention damages during opening argument — until their post-verdict Rule 50 motion, it must be deemed waived. Additionally, although the two cited cases do acknowledge that, in certain circumstances, a trial court might enter judgment immediately after such a delinquent opening argument, neither case upheld such a premature dismissal on its facts. See Best v. Dist. of Columbia, 291 U.S. 411, 415 (1934); Franchi Constr. Co. v. Combined Ins. Co. of Am., 580 F.2d 1, 8 (1st Cir. 1978).

21

Thus, "[w]hile the district court has the power to direct a verdict following the plaintiff's opening statement, to warrant the exercise of that power 'it must clearly appear, after resolving all doubts in plaintiff's favor, that no cause of action exists.'" Id. (citations omitted).

Although plaintiffs' counsel certainly could have been more particular, in no respect did their opening statements remotely permit the suggestion that the Davignon children had sustained no damages. See id. (in order to warrant early dismissal, opening statement must be unambiguously "inconsistent" with asserted cause of action). Instead, these opening statements placed the children in the presence of tumultuous confrontations between their parents and the Clemmeys, which necessarily implied that the children were exposed to the harassment directed at their parents. See Sixty-Eight Devonshire, Inc. v. Shapiro, 202 N.E.2d 811, 815-16 (Mass. 1964) ("[I]n an opening it is not to be expected that a plaintiff will outline his damages with particularity. That is a matter ordinarily left to proof.") (citation omitted).[8] Consequently, we conclude that (i) the instant claim has been waived; and (ii)

_____

[8]For instance, plaintiffs' counsel stated that they represented the Davignon children; "Patty Kelley arrive[d], with the two babies in the back of the car" at the Clemmeys' business on the day the Clemmeys fired Davignon, and that when Kelley left with the children to get the police, she was crying; and the Clemmeys submitted a false child-abuse claim, against Davignon and Kelley, to the DDS, seeking to have the Davignon children removed from parental custody.

22

appellants have not demonstrated an "absolute dearth of evidentiary support" for the jury verdict. Udemba, 237 F.3d at 13-14.

The second sufficiency challenge advanced by the Clemmeys — that the children failed to establish that they sustained any "direct impact" from the alleged harassment — was waived as well. Contrary to their record citations on appeal, the Clemmeys failed to include the present contention in their prejudgment Rule 50 motions. Appellants' assertion that their post-verdict motion not only "focused" upon the plaintiffs' failure to mention damages in their opening arguments, but also raised the "direct impact" argument, is utterly disingenuous. Instead, their post-verdict motion focused exclusively upon the "opening argument" claim. See CMM Cable Rep, Inc., 97 F.3d at 1530-31.

Moreover, even if we were to assume, arguendo, that Massachusetts law requires evidence of "direct impact," as advocated by the Clemmeys, the record on appeal contains such evidence. Unlike a truly absent family member who lives in another state, for example, the Davignon children resided with their parents, and their family home was the focal point of the Clemmeys' campaign. Accordingly, it cannot reasonably be considered unduly speculative to infer that the Davignon children were directly impacted by the Clemmeys' actions. Furthermore, the record discloses several instances in which the Clemmeys directed their conduct at the children. For example, Karl Clemmey himself directly asserted to

23

the Davignon children that they were "assholes," and their parents "pieces of shit!"  Finally, Karl Clemmey submitted a false child-abuse complaint to DSS, which resulted in a DSS interview of the Davignon children.

Accordingly, and for all these reasons, the Clemmey appeal must be denied.  See Udemba, 237 F.3d at 13-14.

## B.    The Davignon Cross-Appeal

In January 1998, the Clemmeys' real estate company, which owned the house the Davignons were renting, brought suit in state housing court to evict Neal Davignon and Patricia Kelley, who then counterclaimed against both the real estate company and Karl Clemmey for intentional infliction of emotional distress.  In July 1998, Davignon, Kelley, and the company (but not Karl Clemmey) entered into an Agreement for Judgment, which provided, inter alia, that (i) judgment enter for the real estate company "for possession only," requiring the Davignons to vacate the premises by October 1, 1998; (ii) the real estate company reimburse the Davignons for moving expenses and attorney fees; (iii) "[t]he parties agree to waive all claims and counterclaims regarding this matter with prejudice"; and (iv) that the Agreement for Judgment was to operate as "a direct order from the [Housing] Court . . . [and]  as an injunction."  The caption of the Agreement designated the company alone (i.e., not Karl Clemmey) as "Landlord/Plaintiff," and Davignon and Kelley as

24

"Tenant/Defendant." Karl Clemmey's counsel signed the Agreement for "P's" – viz., Plaintiffs.

Davignon and Kelley now cross-appeal from a post-trial ruling, in which the district court set aside their $2 million damages award against Karl Clemmey for intentional infliction of emotional distress, on the ground that their July 1998 Agreement for Judgment in the housing-court case is res judicata. See Forman v. Wolfson, 98 N.E.2d 615, 616 (Mass. 1951) (noting three elements of res judicata defense: "identity of cause of action and issues, the same parties, and judgment on the merits by a court of competent jurisdiction").

### 1. Appellate Jurisdiction

First, the Davignons assert that the district court lacked subject matter jurisdiction to vacate the jury verdict, since Karl Clemmey failed to submit his post-trial motion within the ten-day postjudgment deadline. For the reasons previously discussed, see supra Section II.A.3(a), we bypass the jurisdictional issue, as the Davignon and Kelley cross-appeal must be sustained on the merits in any event. See Kelly, 187 F.3d at 197.

### 2. The Waiver of the Karl Clemmey Res Judicata Defense

Next, the Davignons insist on appeal, as they did before the district court, that Karl Clemmey waived any res judicata defense by failing to raise it until near the close of the Davignons' case on the eighth day of the nine-day trial. As an

25

affirmative defense enumerated in Federal Rule of Civil Procedure 8(c), normally <u>res</u> <u>judicata</u> is deemed waived unless raised in the answer.  <u>See</u> Fed. R. Civ. P. 8(c); <u>Rivera-Puig</u> v. <u>Garcia-Rosario</u>, 983 F.2d 311, 319 n.12 (1st Cir. 1992); <u>Badway</u> v. <u>United States</u>, 367 F.2d 22, 24-25 (1st Cir. 1966); <u>see</u> <u>also</u> Mass. R. Civ. P. 8(c).[9]

Rule 8(c) is designed to provide plaintiffs with adequate notice of a defendant's intention to litigate an affirmative defense, thereby affording an opportunity to develop any evidence and offer responsive arguments relating to the defense.  <u>See</u> <u>Knapp</u> <u>Shoes, Inc.</u> v. <u>Sylvania Shoe Mfg. Corp.</u>, 15 F.3d 1222, 1226 (1st Cir. 1994).  There are certain exceptions to the Rule 8(c) bar which might be invoked, <u>inter</u> <u>alia</u>, either where (i) the defendant asserts it without undue delay and the plaintiff is not unfairly prejudiced by any delay, <u>see</u> <u>id.</u>; or (ii) the circumstances necessary to establish entitlement to the affirmative defense did not obtain at the time the answer was filed, <u>see</u>, <u>e.g.</u>, <u>Depositors Trust Co.</u> v. <u>Slobusky</u>, 692 F.2d 205, 208 (1st Cir. 1982) ("A party may also have recourse to a late discovered affirmative defense by obtaining leave to amend his complaint.").

---

[9]Federal Rule 8(c) provides, in pertinent part: "In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, <u>res</u> <u>judicata</u>, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense." Fed. R. Civ. P. 8(c) (emphasis added).

Although application of the <u>res judicata</u> doctrine essentially constitutes a legal determination for the district court, which we would assess <u>de novo</u>, post-trial motions generally are reviewed only for abuse of discretion, as is the case with district court rulings regarding whether a defendant timely interposed an affirmative defense. See <u>Perez</u> v. <u>Volvo Car Corp.</u>, 247 F.3d 303, 318-19 (1st Cir. 2001).

In the instant case, Karl Clemmey concededly failed to raise the <u>res judicata</u> defense in his answer. Moreover, given the circumstances, the district court abused its discretion, both in permitting Clemmey to assert a <u>res judicata</u> defense at the eleventh hour, and in failing to address the Rule 8(c) waiver issue squarely raised by the Davignons in their opposition. See <u>Coutin</u> v. <u>Young & Rubicam P. R., Inc.</u>, 124 F.3d 331, 336 (1st Cir. 1997) (noting that "abuse of discretion" obtains if court overlooks material factor).

The contention that Karl Clemmey raised the <u>res judicata</u> defense before trial is disingenuous, especially since he relies entirely upon the fact that he asserted an <u>estoppel</u> defense in his answer. To the contrary, (i) estoppel — <u>viz.</u>, equitable estoppel — is a defense separate and distinct from <u>res judicata</u>; and (ii) estoppel broadly adverts to a claimant's prior representations and conduct in general, while Rule 8(c), with its individualized enumeration of "<u>res judicata</u>," "estoppel," and "release" as

27

affirmative defenses, plainly evinces an intention to accord discrete treatment to the preclusive effects of prior consent judgments, releases, and settlements.

Additionally, Karl Clemmey disingenuously contends that the plaintiffs were placed on notice, during discovery, that he intended to pursue a res judicata defense, simply by virtue of the fact that Clemmey inquired of Patricia Kelley, on deposition, regarding the Agreement for Judgment. The Patricia Kelley deposition reflects, however, that defense counsel briefly probed her understanding of the intended scope of the July 1998 settlement. When Kelley insisted upon a narrow interpretation, and emphasized her understanding that her waiver of claims pertained exclusively to claims "regarding this matter" — viz., the company's claim for eviction and possession — defense counsel dropped the subject. At that juncture, therefore, it seems much more likely that plaintiffs would have understood that Clemmey would not pursue any defense predicated on the preclusive effect of the Agreement for Judgment, particularly in light of Clemmey's admitted failure to raise the defense in his answer.

Those cases which permit the interposition of an affirmative defense outside the pleadings generally have involved moderate delays, such as an attempt to raise the defense in a pretrial motion to dismiss or for summary judgment, rather than at trial or in a postjudgment motion. Compare, e.g., LaFreniere Park

28

<u>Found.</u> v. <u>Broussard</u>, 221 F.3d 804, 808 (5th Cir. 2000) (allowing affirmative defense to be raised in summary judgment motion), <u>with</u> <u>Mozingo</u> v. <u>Correct Mfg. Corp.</u>, 752 F.2d 168, 172 (5th Cir. 1985) (rejecting affirmative defense raised after jury verdict). Such postponements become far less tolerable where a defendant, such as Karl Clemmey, has tendered no justification whatsoever for the belated request for further delay, and his putative entitlement to the <u>res</u> <u>judicata</u> defense accrued well before the time Clemmey submitted an answer, in November 1999, to the Davignon complaint. <u>See</u> <u>Slobusky</u>, 692 F.2d at 208; <u>see</u> <u>also</u> <u>In re Cumberland Farms,</u> <u>Inc.</u>, 284 F.3d 216, 227 (1st Cir. 2002) ("[I]f Rule 8(c) is not to become a nullity, we must not countenance attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff.").

Moreover, Clemmey continued to waffle even after purportedly asserting his affirmative defense. At trial, the parties stipulated that the jury should be instructed that the Agreement, at the very least, waived Davignon's and Kelley's claims with respect to any emotional distress directly attributable to the eviction, as distinguished from that attributable to the other acts of harassment and intimidation perpetrated by the Clemmeys. The district court (i) advised Clemmey's trial counsel that he could later contend, by motion, that the Agreement had a broader preclusive effect; (ii) suggested as possible defenses accord and

29

satisfaction, collateral estoppel (or issue preclusion), and <u>res judicata</u> (or claim preclusion); and (iii) expressed its intention to decide the issue as a matter of law.

Nevertheless, the post-trial motion submitted by Clemmey broached no <u>res judicata</u> defense. Instead, the Clemmey motion captioned his argument "Release," rather than "<u>Res Judicata</u>." Moreover, the motion made but one prefatory citation to the general doctrine of collateral estoppel. All five pages of the Clemmey argumentation focused exclusively upon release, however, yet another affirmative defense which he had never asserted in his answer. <u>See</u> <u>Sharon</u> v. <u>City of Newton</u>, 769 N.E.2d 738, 742 (Mass. 2002) (noting that "the defense of a release must be raised as an affirmative defense and [] the omission of an affirmative defense from an answer generally constitutes a waiver of that defense," but upholding trial court's leave to amend answer to add "release" defense only where it "did not raise a new issue on the eve of trial").

Moreover, as has been made crystal clear, "a suit can be barred by the earlier settlement of another suit in either of two ways: <u>res judicata</u> or release . . . [and] [t]he defenses are <u>separate</u> <u>and</u> <u>distinct</u>." <u>Nottingham Partners</u> v. <u>Trans-Lux Corp.</u>, 925 F.2d 29, 31-32 (1st Cir. 1991) (emphasis added). Here, however, Clemmey argued that once he established the existence of the release, the Davignons had to bear the burden of proving its invalidity, <u>Costello</u> v. <u>Hayes</u>, 144 N.E. 368, 370 (Mass. 1924),

30

whereas the burden of establishing the affirmative defense of <u>res</u> <u>judicata</u> rests upon the proponent. See <u>Cochrane</u> v. <u>Cochrane</u>, 22 N.E.2d 6, 9 (Mass. 1939); <u>see</u> <u>also</u> <u>Nwosun</u> v. <u>Gen. Mills Rests.,</u> <u>Inc.</u>, 124 F.3d 1255, 1257 (10th Cir. 1997) ("<u>Res</u> <u>judicata</u> is an affirmative defense on which the defendant has the burden to set forth facts sufficient to satisfy the elements."). Unlike <u>res</u> <u>judicata</u>, <u>see</u> <u>Forman</u>, 98 N.E.2d at 616, the release defense simply would require a showing that the release applied to Clemmey, encompassed the intentional-infliction claim interposed in the district court, and was legally enforceable (<u>e.g.</u>, not the product of fraud or duress). See <u>Nottingham Partners</u>, 925 F.2d at 32; <u>Cram</u> v. <u>Town of Northbridge</u>, 575 N.E.2d 747, 749 (Mass. 1991); <u>Sher</u> v. <u>Sandler</u>, 90 N.E.2d 536, 540 (Mass. 1950).

It is debatable, however, whether the Agreement for Judgment applies to Clemmey at all, given that his name appears nowhere in its caption. The only parties named in the Agreement are the <u>Clemmey</u> <u>real</u> <u>estate</u> <u>company</u>, Davignon, and Kelley. Moreover, the caption of the Agreement names the company, rather than Karl Clemmey, as "Landlord/Plaintiff," and the Davignons as "Tenant/Defendant."

In addition, the judgment arguably purports simply to settle the real estate company's eviction action, rather than the counterclaims for intentional infliction of emotional distress against Karl Clemmey individually. Karl was merely a counterclaim

31

defendant, of course, not a "plaintiff," and his attorney signed the Agreement as counsel for the plaintiffs. The release ambiguously applies to claims "regarding this matter," which may advert either narrowly to the settlement of the company's claim for eviction, or more broadly to the eviction claim as well as all counterclaims in the case, including the counterclaims against Clemmey individually. But the intended breadth of the pivotal term "matter" is neither expressly nor otherwise unambiguously defined. Finally, the fact that the settlement took effect as "a direct order from the [Housing] Court[,] . . . [and] as an injunction," is not conclusive for purposes of its interpretation, in that the housing court may have envisioned its injunctive order merely as a partial, nonfinal judgment on the 360 Chauncey Street LLC eviction claim.

A judicial interpretation of an ambiguous release of a joint tort liability implicates two important principles. First, unless the release specifically conveys such an intent, it should not be construed as a release of joint tortfeasors. See Cram, 575 N.E.2d at 748-49. Second, any ambiguity in the release is to be resolved in favor of Davignon and Kelley. See Cormier v. Cent. Mass. Chapter of the Nat'l Safety Council, 620 N.E.2d 784, 786 (Mass. 1993) ("[A]ny doubts about the interpretation of the release must be resolved in the plaintiff's favor."). Thus, Clemmey arguably failed to sustain the burden of proving the affirmative defense of release, let alone to meet the more stringent

32

requirements of <u>res judicata</u> (<u>e.g.</u>, identicality of parties, finality of prior judgment).

Nor has Clemmey demonstrated that the <u>res judicata</u> doctrine, even if applicable to the Agreement for Judgment, would support a vacatur of the entire jury verdict. Clemmey acknowledges that evidence of tortious conduct after the entry of the Agreement for Judgment, such as the allegation that he threw a rock through a window at the Davignon home in August 1998, was introduced and admitted at trial. <u>See</u> <u>Havercombe</u> v. <u>Dep't of Educ. of the Commonwealth of P.R.</u>, 250 F.3d 1, 4-5 (1st Cir. 2001) (noting that <u>res judicata</u> may not apply where second lawsuit alleges that defendant engaged in additional, discrete instances of wrongful conduct following prior judgment).[10]

Finally, the record on appeal is sufficiently developed to enable clear resolution of the pivotal Rule 8(c) waiver issue, without a remand. Although the district court ably grappled with the affirmative defense asserted by Clemmey, its failure to consider the waiver issue, which resulted in the vacation of the jury award, constituted an abuse of discretion.

**The district court order allowing the cross-appellees' postjudgment motion is therefore vacated, and the original judgment**

---

[10]Clemmey contends that these post-July 1998 events are immaterial, as the Davignons did not include them in their original complaint. Nevertheless, the testimony was admitted at trial, without objection. Consequently, the related factual issues were tried with the implied consent of the parties.

**for the appellees, entered pursuant to the jury verdict, is hereby reinstated and affirmed. The parties shall bear their own costs. SO ORDERED**.