NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP Nos. CC-12-1059-PaMkTa |
| | ) CC-12-1229-PaMkTa |
| B SQUARED, INC., | ) CC-12-1410 PaMkTa |
| | ) (related appeals) |
| Debtor. | ) |
| _____ | ) Bankr. No. 09-12590-GM |
| | ) |
| DANNY WAYNE PRYOR, | ) Adv. No. 11-01677-GM |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) **M E M O R A N D U M**[1] |
| | ) |
| B SQUARED, INC., | ) |
| | ) |
| Appellee. | ) |
| _____ | ) |

Argued and Submitted on May 16, 2013
at Pasadena, California

Filed - May 31, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Geraldine Mund, Bankruptcy Judge, Presiding

Appearances:    Appellant Danny Wayne Pryor argued pro se; Susan K. Seflin of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP argued for appellee B Squared, Inc.

Before: PAPPAS, MARKELL and TAYLOR, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

An alleged creditor, Danny Wayne Pryor ("Pryor"), appeals three orders of the bankruptcy court[2]: (1) an order finding that Pryor was in contempt (the "Contempt Order") for violating the automatic stay and discharge injunction in the chapter 11[3] case of the reorganized debtor, B Squared, Inc. ("B Squared") (BAP No. CC-12-1059); (2) an order denying reconsideration of an order dismissing Pryor's adversary proceeding seeking revocation of B Squared's plan confirmation (the "Dismissal Order") (BAP No. CC-12-1229); and (3) an order denying reconsideration of an order designating Pryor as a vexatious litigant (the "Vexatious Litigant Order") (BAP No. CC-12-1410). We AFFIRM all three orders.

## FACTS

Pryor is a former real estate contractor and developer in the Los Angeles area. B Squared was a licensed mortgage broker in the state of California.

The dispute between Pryor and B Squared[4] began in 2003-2004. Pryor purchased two parcels of land, one containing fourteen lots and the other four lots, from the City of Lancaster, California (the "Property"). Intending to develop the Property, in November

---

[2] The record in this appeal involves numerous courts. We refer to the court that entered the orders in this appeal as the bankruptcy court or the court. The court hearing Pryor's chapter 7 bankruptcy case is the "Pryor Bankruptcy Court." It is usually clear in context which state court (Los Angeles Central, Lancaster or Long Beach Division) is discussed, so they are all referred to as the state court.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[4] Reference to B Squared also includes any references to its d.b.a., All California Funding.

-2-

2003, Pryor entered into a construction loan agreement with B Squared for $3,500,000, secured by a deed of trust on fourteen lots of the Property ("Construction Loan 1").  In March 2004, Pryor entered into a second construction loan agreement with B Squared for $900,000, secured by a deed of trust on the remaining four lots ("Construction Loan 2").

On July 7, 2005, B Squared caused a Notice of Default to be recorded concerning Construction Loan 1, based on Pryor's alleged failure to pay $130,294.75 in interest.  A foreclosure sale was held on January 13, 2006, at which B Squared acquired title to the fourteen lots by credit bid.  On June 21, 2005, B Squared recorded a Notice of Default concerning Construction Loan 2, based on Pryor's alleged default on his obligation to pay $948,414.54. B Squared acquired title to the four lots at a foreclosure sale on November 18, 2005.

### The Central Division Action

On June 6, 2006, Pryor[5] filed an action in Los Angeles Superior Court, Central Division, <u>American Commodities Real Estate Sec. v. B Squared, Inc.</u>, case no. BC353526 (the "Central Division Action").  In the complaint, Pryor asserted causes of action for quiet title, fraud and related claims relating to the loans and

---

[5] Over the years, Pryor has prosecuted actions and claims against B Squared under the names of Danny Wayne Pryor, Dan Pryor, Dan W. Pryor, Danny Pryor, Danny W. Pryor and Daniel Pryor.  He has also acted through his controlled businesses, American Real Estate Securities, Inc. d.b.a. A.C.R.E.S., Inc., Acres Inc., ACRES, ACRES Development, Inc., ACP Development, LLC, Turnkey Developers, and ROYRP Enterprises, LP.  Although he debates the percentage of his ownership interest in these entities, Pryor has not challenged in this appeal that he controls these entities. Thus, unless there is need to separately identify a particular entity, any reference to Pryor means Pryor or Pryor acting through his controlled entities.

-3-

foreclosures on the Property. The Central Division Action ended on July 30, 2007, when a dismissal judgment was entered against Pryor, "grant[ing] the Demurrers [of B Squared] in their entirety, without leave to amend, as to all six causes of action in [Pryor's] Complaint." The state court awarded B Squared attorney's fees in the amount of $743,597.

The Lancaster Action

On December 17, 2009, Pryor filed a complaint in Los Angeles Superior Court, Lancaster Division, Pryor v. B Squared, Inc., case no. 021132 (the "Lancaster Action"). As discussed below, B Squared had been in bankruptcy for nine months when this action was filed. The complaint in this suit was similar to the one he filed in the Central Division Action, with the same defendants and causes of action. However, Pryor filed this action in his own name (as opposed to the filing of the Central Division Action by ACRES, his controlled corporation) and he filed it in a different court division. B Squared alleges that it was never served with the summons and complaint in the Lancaster Action.

On March 17, 2011, Pryor filed a request for entry of a default judgment in the Lancaster Action. B Squared then appeared in the Lancaster Action on September 22, 2011, and moved for dismissal. Pryor opposed B Squared's motion to dismiss by the filing of an Opposition on October 24, 2011. On November 29, 2011, the state court dismissed the Lancaster Action with prejudice against Pryor.

The April 2010 Action

On April 5, 2010, Pryor filed yet another complaint in Los Angeles Superior Court, again in the Central Division, Pryor v.

-4-

_B Squared, Inc._, case no. 435256 (the "April 2010 Action"). The parties and causes of action were the same as those in the Lancaster Action, which was still open at the time of filing the April 2010 Action. The state court dismissed the April 2010 Action on September 20, 2011, for lack of prosecution. B Squared alleges that it was never served with the summons and complaint in the April 2010 Action.

### The Long Beach Action

As discussed below, the bankruptcy court indicated at a hearing on December 28, 2011, its intention to permanently enjoin any action by Pryor to collect on the debt alleged in the Lancaster Action. Despite this, on January 4, 2012, Pryor filed yet another action in Los Angeles Superior Court, this time in the Long Beach Division, alleging the same claims asserted in the Lancaster Action, and styled as _Pryor v. Lyric Ave. P'ship_, case no. NC-57005. Although Pryor did not list B Squared as a defendant in the caption of this action, the body of the complaint clearly identifies B Squared as a defendant.

### The Bankruptcy Cases

B Squared filed a chapter 11 bankruptcy petition on March 10, 2009. B Squared's Statement of Financial Affairs listed the judgment in its favor and against ACRES/Pryor entered in the Central Division Action of $743,597. B Squared's Statement of Financial Affairs at 2, ¶ 4. B Squared did not list Pryor or any of his controlled entities as creditors in its schedules, and Pryor did not participate in the chapter 11 proceedings.

The bankruptcy court confirmed B Squared's Second Amended Plan of Reorganization at a hearing on July 22, 2010. The court

-5-

entered the order confirming the plan on August 20, 2010. In separate Findings of Fact and Conclusions of Law in Support of Confirmation of Debtor's Second Amended Chapter 11 Plan, the court concluded that all claims arising prior to the date of confirmation would be discharged pursuant to § 1141(d)(1).

A Discharge Order was entered in the B Squared bankruptcy case on March 11, 2011. The Discharge Order provided, in relevant part,

> The debtor has no liability for debts discharged under 11 U.S.C. . . . 1141 except those debts determined by order of a court with competent jurisdiction not to be discharged pursuant to 11 U.S.C. section 523. . . . All creditors whose debts are discharged by this order and all creditors whose judgments are declared null and void by this order are enjoined from instituting or continuing any action or employing any process or engaging in any act to collect such debts as personal liabilities of the debtor.

In the meantime, on June 3, 2009, Pryor had filed his own bankruptcy case under chapter 7. Attached to his Schedule B of personal property is a "List of Secured and Unsecured Creditors" in which he lists the Central Division Lawsuit as an action for fraud, but with no further information or alleged value. The chapter 7 trustee in Pryor's case filed a report of no distribution on December 9, 2011. Pryor was granted a discharge on December 13, 2011.

### The Contempt Order

On November 2, 2011, B Squared filed a Motion for Entry of Order (1) Enforcing the Discharge Injunction; (2) Permanently Enjoining Pryor and his Entities from Attempting to Collect the Discharged Debt; and (3) For Contempt Sanctions (the "Contempt Motion"). Pryor filed an Opposition to the Contempt Motion on

-6-

November 11, 2011.

The bankruptcy court held hearings on the Contempt Motion on November 29 and December 28, 2011. The transcripts of those hearings are not in the record or the bankruptcy court's docket. However, a copy of the court's tentative ruling was docketed on December 28. It reported that Pryor had represented to the court at the November 29 hearing that he had filed the Lancaster Action on advice of his counsel, Ms. Katherine Warwick ("Warwick"), who was representing him in other proceedings. At the November 29 hearing, the bankruptcy court ordered Pryor to provide a declaration from Warwick to support that assertion. Pryor did not provide a declaration, but rather submitted a series of redacted emails between Pryor and Warwick.

The bankruptcy court, at the hearing on December 28, indicated its intention to grant the Contempt Motion, including a permanent injunction against any attempt by Pryor to collect on any debt alleged in the Lancaster Action.[6] A January 30, 2012 order entered by the bankruptcy court provided that: (1) Pryor and related entities were permanently enjoined from any and all attempts to collect on discharged debts, including any claim allegedly arising from the Lancaster Action; (2) any claim that Pryor and related entities may have had against B Squared prior to

---

[6] Recall from the discussion of the Long Beach Action above that — despite the bankruptcy court's statement on December 28, 2011, that it would enter a permanent injunction prohibiting any actions by Pryor or his entities against B Squared — Pryor filed yet another action on January 3, 2012, Pryor v. Lyric Ave. P'ship, case no. NC-57005 (Los Angeles Superior Court), this time in the Long Beach Division, alleging the same claims asserted in the Lancaster Action. B Squared was not named in the caption of that action, but was clearly identified as the object of the action in the text of the complaint.

-7-

the date of the confirmation of B Squared's plan of reorganization was discharged pursuant to § 1141; (3) Pryor and related entities had knowingly and willingly violated the automatic stay in effect in B Squared's bankruptcy case under § 362(a), and knowingly and willingly violated the discharge injunction under §§ 524 and 1141 after B Squared's plan was confirmed; (4) B Squared had been forced to incur substantial expenses in connection with the Lancaster Action and in prosecuting the motion to stop Pryor's continuing violations of the discharge injunction; (5) compensatory sanctions were awarded against Pryor and in favor of B Squared in the amount of $25,000, together with punitive damages in the amount of $10,000.

After the hearing, but before entry of the bankruptcy court's order, on January 17, 2012, Pryor filed a motion asking the bankruptcy court to reconsider the award of sanctions. The court entered an order denying Pryor's motion to reconsider sanctions on January 27, 2012 (the "Contempt Reconsider Order"). In the order denying the reconsideration motion, the court elaborated on its finding that, in suing B Squared, Pryor had not acted on advice of his attorney. The bankruptcy court quoted from one email from Warwick to Pryor, in which Warwick told Pryor that filing the Lancaster Action was a violation of the automatic stay: "I specifically remember saying that it WAS a violation of the automatic stay. . . . Be perfectly clear however, I told you that it was a violation of the automatic stay." Email from Warwick to Pryor, December 3, 2011, quoted in Contempt Reconsider Order at 4 (capitalization of word "WAS" in original).

In fact, the declaration Warwick had submitted on January 12,

2012, directly contradicted Pryor's statements made to the bankruptcy court on November 29 and December 28 that Warwick had advised him that he would not violate the automatic stay by seeking to collect from B Squared because he was not listed on B Squared's schedules. Warwick instead declared that: "Because [Pryor] had not been listed as a creditor in the B Squared bankruptcy case and because he did not proceed otherwise against B Squared in the state court litigation, he believed that he had not violated the automatic stay in this Case." In short, Pryor made the representation to Warwick, not vice versa. The bankruptcy court summarized: "Pryor has twice attempted to get Warwick to state that she told him to proceed regardless of the bankruptcy and she has twice refused." Contempt Reconsider Order at 4.

Pryor filed a timely appeal of the Contempt Order (BAP No. CC-12-1059).

### The Adversary Proceeding and the Dismissal Order

On December 27, 2011, Pryor filed an adversary proceeding Complaint to Deny Discharge Pursuant to 11 U.S.C. § 523 and 727 against B Squared in the bankruptcy court. In it, Pryor generally asserted the same claims that he had alleged against B Squared in the Central Division and Lancaster Actions, but couched them as objections to discharge and requests for exception of his claims from discharge.

Almost immediately, on January 30, 2012, B Squared filed a motion to dismiss the adversary proceeding pursuant to Civil Rule 12(b)(6). B Squared argued that the complaint was time-barred, too conclusory to survive a motion for dismissal

-9-

under Civil Rule 12(b)(6), and barred under the doctrines of collateral estoppel and res judicata. Pryor responded, repeating the general allegations made in the Central Division and Lancaster Actions, emphasizing his allegation that B Squared had engaged in fraud.

B Squared, through counsel, and Pryor, acting pro se, appeared at the bankruptcy court hearing concerning the motion to dismiss on February 28, 2012. A transcript of that hearing is in the record. The court thereafter entered a Memorandum of Opinion Re Defendant's Motion to Dismiss Adversary Proceeding on March 20, 2012. In the Memorandum, the court opined that it would not consider the arguments of either party, because it had no authority to grant the relief requested in the Complaint.

First, B Squared had been granted a discharge under § 1141, and a discharged chapter 11 debtor is not subject to denial of discharge under § 727.

Second, the bankruptcy court noted that B Squared is a corporation and, with certain irrelevant exceptions, only individual debtors are subject to exceptions from discharge under § 523(a).

Finally, the bankruptcy court observed that B Squared's discharge had been authorized in the Confirmation Order and that, under § 1144, the court may revoke a confirmation order only if a motion to revoke is filed within 180 days of the entry of that order. Even if the Complaint were to be construed as a motion to revoke, because it was filed on December 27, 2011, or over 400 days after entry of the Confirmation Order, it was time barred. The bankruptcy court concluded that the 180-day rule

was not equitably tolled, based principally on the multiple misrepresentations made to the court by Pryor.

The bankruptcy court granted B Squared's motion to dismiss and entered an order dismissing the adversary proceeding with prejudice and without leave to amend on March 20, 2012.

Pryor filed a Motion to Reconsider Dismissal on April 16, 2012, twenty-six days after entry of the Dismissal Order.[7] Pryor's motion to reconsider the Dismissal Order is fifty-seven pages long but, at bottom, generally complains that the bankruptcy court had not considered all of the papers he submitted on the motion to dismiss.

The bankruptcy court denied Pryor's motion to reconsider the Dismissal Order without a hearing in an order entered April 20, 2012. In the order, the court noted that the documents that Pryor asserted had not been considered did not address the basis of the court's ruling and therefore made no difference in the outcome of the motion to dismiss. The court also observed that at the hearing on February 28, 2012, an issue had been raised as to whether Pryor had standing to prosecute the adversary proceeding because the claims he asserted were property of his bankruptcy estate. Pryor asserted that the claims had been abandoned by the bankruptcy court the previous week. Counsel for B Squared stated that she had reviewed the docket of the bankruptcy case and did

---

[7] A dismissal with prejudice is a final, appealable order that starts the clock on the time to appeal. Elliott v. White Mt. Apache Tribal Ct., 566 F.3d 843, 846 (9th Cir. 2006). A reconsideration motion under Rules 9023 and 9024 (incorporating Civil Rules 59(e) and 60(b)(6)) will toll the time to appeal only if filed within fourteen days of entry of the order. Rule 8002(b)(3) and (4).

-11-

not find any such order. The bankruptcy court ordered Pryor to submit proof that they had been abandoned. Pryor never provided proof that the claims were abandoned. Therefore, the court concluded that the claims Pryor asserted in his Complaint were held by the chapter 7 trustee, implicitly holding that Pryor did not have standing to assert them.[8]

Pryor filed a timely appeal of the order denying his motion to reconsider the dismissal order on April 30, 2012. However, as noted above, because his reconsideration motion did not toll the time for an appeal of the underlying dismissal order, the dismissal order is not before us in this appeal.

The Vexatious Litigant Order

B Squared filed a motion to have Pryor deemed a vexatious litigant on April 26, 2012 (the "Vexatious Litigant Motion"). In it, B Squared included a chart of eight cases Pryor had filed which, it alleged, demonstrated that Pryor:

> routinely forum shops, has cases dismissed and then refiles, files actions after the statute of limitations has run, when unsuccessful against a party refiles in another court, files baseless appeals, all while not paying a dime for any of his filings or towards the hundreds of thousands in attorneys' fees and sanctions that have already been awarded against him.

Pryor filed opposition documents on May 15, 2012, generally disputing B Squared's allegations.

---

[8] The B Squared bankruptcy court was apparently not aware on April 20, 2012, that the bankruptcy court in Pryor's bankruptcy case had, on April 17, 2012, denied Pryor's request to order the trustee to abandon the claims against B Squared. Hr'g Tr. 6:9-17, April 17, 2012 (THE PRYOR BANKRUPTCY COURT: "Let me stop you because it's obvious we're not going to get anywhere as far as B Squared is concerned. I'm going to deny your motion to abandon [the B Squared claims]. I'm not going to do anything to encourage you in any way to further abuse the bankruptcy system, at least in relationship to the B Squared action.").

The bankruptcy court heard arguments from B Squared and Pryor on May 29, 2012.  After taking the matters under submission, the court entered the Vexatious Litigant Order on June 22, 2012.  The Vexatious Litigant Order concluded that Pryor had adequate notice of, and opportunity to defend against, B Squared's motion.  It attached a chart listing twelve cases, motions, and events that "led this Court to conclude that a vexatious litigation order is necessary and appropriate as to and against the Pryor Parties." It noted that Pryor had failed to pay contempt sanctions previously entered against him in the B Squared bankruptcy, leading the court to believe that additional monetary sanctions would be ineffective.  Instead, the bankruptcy court enjoined Pryor from initiating any form of action against B Squared in regard to the Property without obtaining the court's prior written consent.

Pryor filed a reconsideration motion seventeen days after entry of the Vexatious Litigation Order on July 9, 2012.  Pryor's motion alleged that the bankruptcy court was not aware that Pryor had been granted a default judgment in the Long Beach Action against all defendants except B Squared, and reasoned that this "mooted" the Vexatious Litigation Order.  The court denied the motion to reconsider the Vexatious Litigation Order in an order entered on August 1, 2012.  The bankruptcy court found the reconsideration motion simply repeated prior oppositions and provided no relevant new evidence.

Pryor filed a timely appeal of the order denying reconsideration of the Vexatious Litigant Order on August 8, 2012.

-13-

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (I), (J) and (L). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Whether the bankruptcy court abused its discretion in granting the motion for the Contempt Order.

Whether the bankruptcy court abused its discretion in denying reconsideration of the Dismissal Order.

Whether the bankruptcy court abused its discretion in denying reconsideration of the Vexatious Litigant Order.

**STANDARDS OF REVIEW**

An award or denial of sanctions under § 105(a) is reviewed for abuse of discretion. Nash v. Clark County Dist. Atty's. Office (In re Nash), 464 B.R. 874, 878 (9th Cir. BAP 2012).

A trial court's denial of reconsideration under Civil Rule 60(b) is reviewed for abuse of discretion. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010).

In applying the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc). If the correct legal rule was applied, we then consider whether its "application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. Only in the event that one of these three apply are we then able to find that the bankruptcy court abused its discretion. Id.

-14-

**DISCUSSION**

**I.**

**<u>The bankruptcy court did not abuse its discretion in awarding monetary sanctions against Pryor for violating the automatic stay and discharge injunction</u>**.

Although Pryor appeals the Contempt Order, it appears that he only challenges in this appeal the bankruptcy court's order that he pay compensatory and punitive damages. Consequently, we do not review the bankruptcy court's decision to permanently enjoin Pryor from seeking to collect the discharged debt from B Squared.

The bankruptcy court awarded $25,000 in damages to B Squared as compensation for Pryor's knowing and willful violation of the automatic stay and the discharge injunction, and $10,000 in punitive damages for Pryor's knowing and willful violation of the discharge injunction. Since the case law distinguishes between sanction awards under these two injunctions, we must first review the differences.

The filing of a bankruptcy petition under chapter 11 of the Bankruptcy Code creates an automatic stay which prohibits, inter alia, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]" § 362(a)(1); <u>Snavely v. Miller (In re Miller)</u>, 397 F.3d 726, 730-31 (9th Cir. 2006) ("The stay of section 362 is extremely broad in scope and . . . should apply to almost any type of formal or informal action against the debtor or property of the estate.").

An automatic stay arose when B Squared filed the chapter 11 bankruptcy petition on March 10, 2009. It is uncontested that the dispute between Pryor and B Squared regarding the Property arose during the period 2003-2006. The automatic stay remained in effect to bar actions against B Squared until entry of the discharge and discharge injunction on March 11, 2011. § 362(c)(2)(C) ("[T]he stay of any other act under subsection (a) of this section continues until the earliest of — . . . (c) if the case is a case under . . . chapter . . . 11 . . . of this title, the time a discharge is granted or denied[.]"); <u>Zilog, Inc. v. Corning (In re Zilog, Inc.)</u>, 450 F.3d, 996, 1009 (9th Cir. 2006). Consequently, any attempt by Pryor to commence or continue an action against B Squared to collect on an alleged debt concerning the Property between March 10, 2009 and March 11, 2011 would constitute a violation of the automatic stay, and any collection actions against B Squared taken on or after March 11, 2011 would constitute a violation of the discharge injunction.

The bankruptcy court imposed sanctions against Pryor for violating the automatic stay and discharge injunctions based on his knowing and willful actions in the Lancaster Action. Contempt Order at ¶¶ 2-4. The court imposed sanctions under the authority granted by § 105(a)[9]; <u>Cal. Employment Dev. Dep't v. Taxel</u>

---

[9] **Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

(continued...)

-16-

(In re Del Mission Ltd.), 98 F.3d 1147, 1152 (9th Cir. 1996) (holding that damages for violation of the automatic stay of a corporate debtor are properly sought under § 105(a)). The propriety of an award made under § 105(a) turns not on a finding of bad faith or subjective intent, but rather on a finding of "willfulness," where willfulness has a particularized meaning:

> "[W]illful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional.

Havelock v. Taxel (In re Pace), 67 F.3d 187, 191 (9th Cir. 1995).

Pryor provided inconsistent statements in the record concerning the date when he first became aware of the B Squared bankruptcy case and the automatic stay. Pryor conceded in a declaration submitted in the Lancaster Action on September 28, 2011 that he was aware of the pendency of the B Squared bankruptcy case by August 3, 2010. But the bankruptcy court had evidence provided by Pryor himself that he knew of the B Squared bankruptcy case and existence of the automatic stay before termination of that stay, and that he nonetheless knowingly and willfully violated that stay.

At the hearing on the Contempt Motion on November 29, 2011, Pryor informed the bankruptcy court that when he inquired of his counsel, Warwick, who represented him in other matters, she

---

[9](...continued)
determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

§ 105(a).

-17-

counseled him that his activities in the Lancaster Action did not violate the stay. But when Pryor submitted the copies of emails between himself and Warwick, she stated that: "I specifically remember saying that [the Lancaster Action] WAS a violation of the automatic stay. . . . Be perfectly clear however, I told you that it was a violation of the automatic stay." Email from Warwick to Pryor, December 3, 2011, quoted in Contempt Reconsider Order at 4.

Indeed, in his reply brief, Pryor cites to his testimony given on April 25, 2012, before the bankruptcy court in his own bankruptcy case. As shown by the transcript of that hearing in the excerpts of record, in a colloquy between Pryor and the Pryor Bankruptcy Court, the court suggested that Pryor was being evasive on the question of when he first became aware of the B Squared bankruptcy. The Pryor Bankruptcy Court then placed Pryor under oath:

> THE PRYOR BANKRUPTCY COURT; You're under oath. I'm asking you directly, did you — when did you first get knowledge of the B Squared bankruptcy? . . .
>
> PRYOR: After December 2009.
>
> THE PRYOR BANKRUPTCY COURT: After — when after?
>
> PRYOR: That was — I think it was in January, right around January.
>
> THE PRYOR BANKRUPTCY COURT: Of 2009?
>
> PRYOR: Not in 2009, but the next year.
>
> THE PRYOR BANKRUPTCY COURT: 2010?
>
> PRYOR: Right.

Hr'g Tr. 9:10-10:4, April 27, 2012.

Thus, the record on appeal establishes that Pryor, contrary to his representation that he did not know of the B Squared

-18-

bankruptcy until August 3, 2010, testified that he was aware of the bankruptcy filing by January 2010. And contrary to his initial representation to the bankruptcy court that his counsel advised him that it would not violate the stay for him to pursue the Lancaster Action, he subsequently produced emails and a declaration from counsel where she denies giving him that advice. In the bankruptcy court's words, "Pryor has twice attempted to get Warwick to state that she told him to proceed regardless of the bankruptcy and she has twice refused." Contempt Reconsider Order at 4.

But regardless of the various suspect representations by Pryor, it cannot be challenged that, at some point _during_ the pendency of the B Squared bankruptcy case, Pryor became aware of the automatic stay and failed to remedy his on-going stay violations. In other words, whether he had knowledge of the stay in August 2010, January 2010, or earlier, he was under an obligation to immediately dismiss B Squared from the Lancaster Action. Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192 (9th Cir. 2003) (upon discovery of a violation, the creditor "had an affirmative duty to remedy his automatic stay violation."). Even an "arguably innocent" stay violation that the creditor does not attempt to remedy immediately may constitute a willful stay violation. In re Zilog, Inc., 450 F.3d at 1007.

Pryor never sought to stop the Lancaster Action, nor to dismiss B Squared from it, for the seven months after the latest possible date that he admits he was aware of B Squared's bankruptcy, August 2010. And after the automatic stay terminated with the entry of the discharge injunction, Pryor continued to

-19-

press his claims against B Squared in the Lancaster Action. On March 17, 2011, Pryor sought entry of a default judgment against B Squared in the Lancaster Action. Then, after B Squared finally was made aware of the Lancaster Action and moved to dismiss the action, Pryor opposed the motion to dismiss B Squared on October 24, 2011. B Squared would only escape from the Lancaster Action when the state court dismissed the proceeding with prejudice against Pryor on November 29, 2011.

Pryor has not challenged in this appeal the calculation of the amount of the bankruptcy court's award of $25,000 in compensatory damages, which the court awarded based on a detailed fee and expense statement from B Squared. We therefore find that the bankruptcy court did not abuse its discretion in awarding compensatory damages to B Squared for expenses incurred in responding to Pryor's knowing and willful violation of the automatic stay and discharge injunction.

The bankruptcy court also awarded $10,000 in punitive damages against Pryor for his violation of the discharge injunction. Section 524 of the bankruptcy code provides that a discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." § 524(a)(2). A party who knowingly violates the discharge injunction can be held in contempt under § 105(a) of the Bankruptcy Code. Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 507 (9th Cir. 2002) (holding that civil contempt is an appropriate remedy for a willful violation of § 524's discharge injunction). Although the bankruptcy court may not award punitive damages for

-20-

violation of the automatic stay under § 105(a), it may award punitive damages under that section for knowing and willful violations of the discharge injunction. Espinosa v. United Student Aid Funds, 553 F.3d. 1193, 1205 n.7 (9th Cir. 2008). ("If the bankruptcy court finds that the creditor here willfully violated the injunction, it shall, at the very least, impose sanctions to the extent necessary to make [debtor] whole. See 2 Collier Bankruptcy Manual (3d rev. ed.) ¶ 524.02[2][c] ('In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees.')"). The standard in this circuit for violations of the discharge injunction is that the movant must prove that the creditor: (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) (citing Hardy v. United States (In re Hardy), 97 F.3d 1384, 1390 (11th Cir. 1996)).

Although a bankruptcy court can infer that a creditor has knowledge of a discharge injunction from the creditor's knowledge of the bankruptcy case, such an inference must be proven. In re Zilog, Inc., 450 F.3d at 1003. The bankruptcy court conducted hearings on the contempt motion on November 29 and December 28, 2011. The court considered the declarations from the parties regarding the discharge injunction. In particular, in his declaration, Pryor states,

> B Squared counsel makes the claim whether I proceeded against B Squared Inc. after they were discharged. This is apparently "Yes." After Warwick had checked PACER and advised me that I was not listed as a creditor, I was under the assumption that this debt was not

-21-

discharged. It is clear that I was not acting without the advice of an experience[d] Bankruptcy Attorney. I was under the assumption that B Squared debt concerning Dan Pryor and his entities were never discharged. I would never [have] violated an automat[ic] stay of this court or any court knowing that the claims were discharged.

Declaration of Dan Pryor at 4, December 23, 2011. Pryor thus concedes that he knew that there had been a discharge entered in B Squared's bankruptcy case, but he disputes the consequences of that discharge.

There was conflicting evidence whether Pryor knew of the existence and effect of the discharge injunction when it was entered on March 11, 2011. But the evidence is uncontested that Pryor was made aware of the injunction and consequences for violating it on September 19, 2011, when B Squared sent Pryor an email stating:

Please further note that [this] email shall serve as notice that, continuing to prosecute [the Lancaster Action] is a clear violation of the automatic stay and discharge injunction and if we are forced to do so, [we] will file a motion in the Bankruptcy Court to permanently enjoin you from attempting to collect on an alleged pre-petition obligation of [] B Squared, and will seek monetary sanctions and attorney's costs against you for your blatant disregard of the discharge injunction.

B Square email to Pryor, September 19, 2011, attached to and incorporated as exh. G to the Supplemental Declaration of Simon Aron in support of the Contempt Motion, December 20, 2011.

As mentioned earlier, the record does not include a transcript of the December 28, 2011 hearing where the bankruptcy court reported its reasons for awarding sanctions for violation of the automatic stay and discharge injunction. However, in its Contempt Reconsider Order, the court reported its credibility

-22-

ruling at the December 28, 2011 hearing: "Further, as I stated at the December 28 hearing, I simply do not believe Pryor as to his belief on the effect of the discharge." Contempt Reconsider Order at 5. In this appeal, Pryor acknowledges that the court used those same words at the December 28 hearing. Pryor Reply Br. at 28.

Additionally, there is a copy of the state court docket of the Lancaster Action in the excerpts of record.[10] The docket entries include: (1) 9/12/2011, Pryor files Notice of Hearing on OSC why a default judgment should not be entered against B Square; (2) 9/22/2011, B Squared files declaration of Simon Aron opposing entry of default judgment against B Squared; (3) 9/29/2011, Pryor files Declaration in response to declaration of Aron; (4) 10/19/2011, B Squared files Motion to Dismiss action against B Squared; (5) 10/24/2011, Pryor files Request for Entry of Default against B Squared; (6) 10/24/2011, Pryor files Opposition to Motion to Dismiss of B Squared; (7) 11/29/2011, "JUDGMENT OF DISMISSAL WITH PREJUDICE OF THE ACTION IN ITS ENTIRETY IS ENTERED IN FAVOR OF B SQUARED."

In sum, the record on appeal amply demonstrates that Pryor knowingly and willfully continued to prosecute the Lancaster Action after Pryor had notice of the discharge injunction and the consequences of violating it. Pryor has not challenged in this appeal the amount of punitive damages awarded against him to

---

[10] A copy of the state court docket in the Lancaster Action was attached to and incorporated in the Declaration of Elsa Horowitz, attorney for B Squared, submitted in support of B Squared's Vexatious Litigant Motion. Bankr. 09-12590 at dkt. no. 597. The Vexatious Litigant Order acknowledged review of all declarations submitted related to the Vexatious Litigant Motion.

-23-

B Squared.  Therefore, we also conclude that the bankruptcy court did not abuse its discretion in awarding $10,000 in punitive damages for Pryor's knowing and willful violation of the discharge injunction.

## II.

**The bankruptcy court did not abuse its discretion in denying Pryor's motions for reconsideration of the Dismissal Order and the Vexatious Litigant Order**.

As pointed out above, Pryor did not timely appeal the Dismissal Order or the Vexatious Litigant Order.  However, the bulk of Pryor's arguments in these two appeals challenge the merits of the bankruptcy court's decision to grant the underlying orders.  We may not review those orders in this appeal because we do not have jurisdiction to hear them.  Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 870 (9th Cir. 2012) ("A reviewing court lacks jurisdiction over an appeal that is not timely filed.  The requirement of a timely notice of appeal is mandatory and jurisdictional.").

Pryor's briefs are also unclear under which provisions of the Rules he sought reconsideration of these orders.  His reconsideration motions in the bankruptcy court sought review of both orders under Civil Rules 59(e) and 60(b)(6), as incorporated by Rules 9023 and 9024.  But Civil Rule 59(e) was not available to him because such a motion must be filed within fourteen days of entry of the order sought to be reconsidered.

Moreover, Civil Rule 60(b)(6) imposes a very high threshold of proof.  Its "catch-all" provisions are available rarely, are solely an equitable remedy to prevent manifest injustice, and should be invoked only where extraordinary circumstances prevented

-24-

a party from taking timely action to correct an erroneous judgment. <u>United States v. Washington</u>, 394 F.3d 1152, 1157 (9th Cir 2005). As such, under Civil Rule 60(b)(6), a party seeking relief must demonstrate both injury and circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion. <u>Id.</u>

In both reconsideration appeals, Pryor argues that the bankruptcy court's failure to review documents that he admittedly submitted at the last minute or were somehow "lost in the mail" prevented him from receiving a fair consideration of his position. But Pryor asserts that the documents he submitted in seeking review of the Dismissal Order were "lost in the mail" and he only submitted the documents in seeking review of the Vexatious Litigant Order the day before the hearing on reconsideration. In other words, he provided no acceptable explanation for his failure to provide the documents in sufficient time for the court to consider them.

In its order denying reconsideration of the Dismissal Order, the bankruptcy court in fact observed that it had reviewed the allegedly "lost" documents and found that they "do not go to the basis of the ruling and make no difference in the outcome of the motion." Order Denying Motion to Reconsider Dismissal at 4, April 20, 2012. Thus, Pryor cannot argue here on appeal that he was prejudiced because the bankruptcy court did not examine the documents. The court did examine them and rejected his arguments. Based on our review of the record, we see no abuse of discretion in the court's procedure.

As to the Vexatious Litigant Order, Pryor argues that the

-25-

bankruptcy court failed to consider papers he submitted the day before the hearing, showing that he had submitted in the state court a Motion to Consolidate the Lancaster Action with the Long Beach Action. On reconsideration, the bankruptcy court did in fact review those papers and ruled that "the request is repetitious of prior oppositions and provides no relevant new evidence." Order Denying Reconsideration of Vexatious Litigant Order at 2, August 1, 2012.

In other words, in both appeals of reconsideration of the Dismissal Order and the Vexatious Litigant Order, Pryor did not demonstrate "circumstances beyond his control that prevented him from proceeding with the prosecution or defense of the action in a proper fashion." In one case, he submitted the documents only the day before they were due; in the other they were allegedly "lost in the mail." But in either case, on reconsideration the court in fact reviewed the documents and thus he was not prevented from proceeding with their prosecution. Thus, he cannot satisfy the elements needed for extraordinary relief under Civil Rule 60(b)(6).

Despite his extensive court experience, we recognize that Pryor is a pro se litigant and not an attorney. We also acknowledge our responsibility to treat his pleadings liberally. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Fairly considering Pryor's position leads us to conclude that the most appropriate statute to support his request for relief from the Vexatious Litigant Order and Dismissal Order was Civil Rule 60(b)(2) ("newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a

-26-

new trial under Rule 59(b)"). To obtain relief under Civil Rule 60(b)(2), the creditor must show that the "new evidence": (1) existed at the time of the trial; (2) could not have been discovered through due diligence; and (3) was "of such magnitude that production of it earlier would have been likely to change the disposition of the case." Jones v. Aero/Chem Corp., 921 F.2d 875, 878 (9th Cir. 1990).

In Pryor's motion to reconsider the Dismissal Order, according to the bankruptcy court, he attached "the schedules of the debtor and the mailing matrix, the unpublished BAP opinion in Pryor v. ITEC Financial [BAP No. CC-10-1258], various documents from Acres Commodities Real Estate Securities v. B Squared Inc. [LASC BC 353526], fictitious business name statements for Acres Development and Maintenance Unlimited and Pryor's Declaration dated February 27, 2007." The court also noted that Pryor failed to present documentation of his bankruptcy court's alleged abandonment of Pryor's claims against B Squared. The court summarized its ruling on the documents:

> The documents presented in this motion for reconsideration (which Pryor seems to assert were lost in the mail and not reviewed by the court prior to issuance of the memorandum of opinion) do not go to the basis of the ruling and make no difference in the outcome of the motion. The ruling was not made without full review of the filings and it was delayed some weeks after oral argument. In fact, Pryor was ordered to submit information proving that the abandonment had taken place, which he did not do and which is not attached to this motion because it does not exist.

Order Denying Reconsideration of Dismissal Order at 4. In other words, the documents Pryor wanted the bankruptcy court to consider were not new evidence, persuasive, or even relevant. The bankruptcy court did not abuse its discretion in denying

-27-

reconsideration of the Dismissal Order.

In Pryor's motion to reconsider the Vexatious Litigant Order, he asserted, "I filed papers, addressing all the above issues. However, the Court did not receive the papers and have an opportunity to review such papers before the next hearing. For that reason we feel that the court did not have all the fact[s] based on the statement in the ruling and before the final decision was made." On its face, this assertion fails to meet criterion 2 of Jones, that the information submitted could not have been discovered through due diligence.

The bankruptcy court summarized its view of Pryor's motion succinctly: "The motion to vacate the vexatious litigant order is hereby denied. The request is repetitious of prior oppositions and provides no relevant new evidence. The Court has considered all matters put before it and finds no reason to vacate or modify the prior order." Order Denying Reconsideration of Vexatious Litigant Order at 2. The bankruptcy court applied the correct law and its application was not illogical, implausible, or without support in inferences that may be drawn from the facts in the record.

The bankruptcy court did not abuse its discretion in denying reconsideration of the Dismissal Order or the Vexatious Litigant Order.

**CONCLUSION**

We AFFIRM all three orders of the bankruptcy court.