**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re EDRA D. BLIXSETH,

*Debtor,*

RICHARD JOSEPH SAMSON, Chapter 7
Trustee,

*Appellant,*

v.

WESTERN CAPITAL PARTNERS, LLC,

*Appellee.*

No. 11-60042

BAP No.
10-1334

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Hollowell, Jury, and Markell, Bankruptcy Judges, Presiding

Argued on May 10, 2012
Submitted on June 14, 2012
Seattle, Washington

Filed June 21, 2012

Before: Ronald M. Gould, Jay S. Bybee, and Carlos T. Bea,
Circuit Judges.

Per Curiam Opinion

## COUNSEL

Bradley R. Duncan, Hugh R. McCullough, and Anthony S. Wisen of Davis Wright Tremaine LLP, Seattle, Washington; and David B. Cotner of Datsopoulos, MacDonald & Lind, P.C., Missoula, Montana, for the appellant.

Robert W. Hatch, II and Christopher J. Conant of Hatch Halstead LLC, Denver, Colorado, for the appellee.

## OPINION

PER CURIAM:

We adopt in full the opinion of the Bankruptcy Appellate Panel in this case, published at 454 B.R. 92 (B.A.P. 9th Cir. 2011), which we reproduce below:[1]

The Bankruptcy Code requires an individual debtor in a chapter 7[2] case to undertake certain obligations with respect to personal property that secures a debt. 11 U.S.C. § 521(a)(2). A debtor must file a statement of intention indicating whether she intends to surrender or retain such property and must file and perform on her intention within a certain time frame. 11 U.S.C. § 521(a)(2)(A). If a debtor fails to timely meet those obligations, the automatic stay terminates and the property is removed from the estate unless the chapter 7 trustee obtains a determination that the property is of consequential value or benefit to the estate. 11 U.S.C. §§ 521(a)(2)(C), 362(h)(1) and (2).

In this case, the debtor did not file a statement of intention with respect to personal property that was pledged to a creditor and the chapter 7 trustee did not seek a determination that the property was of value or benefit to the estate. However, the chapter 7 trustee appeals the bankruptcy court's ruling that § 362(h) terminated the automatic stay on *all* of the debtor's personal property secured by the creditor's claim and not just on personal property scheduled as securing the claim. We AFFIRM.

---

[1]We have jurisdiction under 28 U.S.C. § 158(d)(1), which grants jurisdiction to each circuit court of appeals over appeals from final orders of its Bankruptcy Appellate Panel. The grant or denial of a motion for relief from an automatic stay is a final order. *Cimarron Investors v. WYID Properties* (*In re Cimarron Investors*), 848 F.2d 974, 975 (9th Cir. 1988).

[2]Unless otherwise indicated, all chapter and section references in the text are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

## I. FACTS

Edra Blixseth (the Debtor) guaranteed a $13,650,000 loan (Loan) made to her son by Western Capital Partners, LLC (Western Capital). The Debtor also pledged certain personal property as collateral for the Loan (the Collateral).[3] Western Capital's security agreement (Security Agreement) describes the Collateral as including all interests owned by the Debtor in any corporation, partnership or limited liability company, all instruments, general intangibles, rights of action, contracts, accounts, goods, antiques, art, and automobiles, wherever located. On June 19, 2007, Western Capital filed a UCC Financing Statement, referencing the Loan and Security Agreement. The UCC Financing Statement, like the Security Agreement, contained a comprehensive description of the Collateral, and encompassed "all personal property of the Debtor wherever located."

On March 26, 2009, the Debtor filed for chapter 11 relief. She filed her bankruptcy schedules and statement of financial affairs on April 29, 2009 (the Schedules). In her Schedules, Western Capital was listed as a secured creditor holding a $13,298,628.13 claim secured by $2 million in "ALL PER-SONAL PROPERTY OWED [sic] BY DEBTOR, FAMILY COMPOUND AT YELLOWSTONE MOUNTAIN CLUB." The Debtor's Schedule B listed personal property valued at $76 million.

On May 29, 2009, the case was converted to chapter 7 and Richard Samson was appointed the chapter 7 bankruptcy trustee (the Trustee). The Debtor amended her Schedules on

---

[3]The personal property appears to secure the Loan rather than the Debtor's guarantee. Western Capital described the Collateral as securing the Loan. The trustee asserted that the Debtor guaranteed the Loan and "[t]o secure payment of the note (but not the guarantee, . . .), she also pledged certain personal property." A copy of the Loan agreement is not included in the record.

June 14, 2009 (the Amended Schedules) to, among other things, correct the list of personal property assets to reflect a value of $69,216,315. The Amended Schedules did not alter the description of Western Capital's debt or the $2 million value given to the Collateral.

On June 30, 2009, the chapter 7 § 341 meeting of creditors was held.[4] By that date, the Debtor had not filed a statement of intention regarding the Collateral, as required by § 521(a)(2)(A).[5] The Trustee did not move for a determination of consequential value or benefit under § 362(h)(2) or for an extension of time to do so.[6]

During the bankruptcy case, Western Capital filed three motions for relief from the automatic stay (the Stay Relief Motions). The Stay Relief Motions sought relief under § 362(d)(2) and were filed on May 1, 2009 (pre-conversion), June 30, 2009, and August 24, 2009. In its May 1, 2009 Stay Relief Motion, Western Capital sought relief from the stay in order to liquidate the Debtor's stock in BLX Group, Inc. (BLX).

In its June 30, 2009 Stay Relief Motion, Western Capital sought relief in order to liquidate the Debtor's fine art, fur-

---

[4]A previous § 341 meeting of creditors was held in the chapter 11 case on May 15, 2009.

[5]A debtor is required to file a statement of intention indicating whether she will surrender or retain personal property pledged to secure a debt within 30 days after filing a petition under chapter 7 or on or before the date of the § 341 meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, fixes. 11 U.S.C. § 521(a)(2)(A).

When a case has been converted to chapter 7, the statement of intention must be filed within 30 days after entry of the order of conversion or before the first date set for the meeting of creditors, whichever is earlier, or within an extended time if sought and granted. Rule 1019(1)(B).

[6]The consequential value or benefit motion must be made "before the expiration of the applicable time set by § 521(a)(2)." 11 U.S.C. § 362(h)(2).

nishings, collectibles, jewelry and other personal property located at the Debtor's California residence, known as Porcupine Creek, in Rancho Mirage, California. In its August 24, 2009 Stay Relief Motion, Western Capital sought relief in order to liquidate some of the Debtor's jewelry. The Trustee did not file objections to the Stay Relief Motions.

On October 6, 2009, the bankruptcy court held a hearing on Western Capital's May 1, 2009 and August 24, 2009 Stay Relief Motions.[7] Western Capital and the Trustee both attended the hearing. Western Capital argued that, notwithstanding its request for relief under § 362(d)(2), it was additionally entitled to relief under § 362(h) since the Debtor had not timely filed a statement of intention regarding the Collateral. The bankruptcy court agreed and entered an order granting Western Capital's two Stay Relief Motions on October 6, 2009 (the Order Granting Relief). The Order Granting Relief found that:

(1)   the Debtor had not filed a statement of intention; and

(2)   the Trustee had not objected to the Stay Relief Motions "indicating to this Court that the bankruptcy estate has determined that Debtor's personal property is of inconsequential value to the bankruptcy estate." The bankruptcy court held that § 362(h) provided Western Capital mandatory relief.

Western Capital subsequently filed various notices of UCC sales to liquidate the Collateral. The sales were postponed while Western Capital and the Trustee worked to resolve the Trustee's concerns regarding the sales, including the Trustee's assertion that the sales violated the automatic stay. However, on March 22, 2010, Western Capital moved forward with a sale of BLX stock, which was the subject of the Order Grant-

---

[7]The June 30, 2009 Stay Relief Motion regarding the property located at Porcupine Creek was continued to November and later withdrawn by Western Capital.

ing Relief (the March Sale). The March Sale also sold the Debtor's interest in two entities and various accounts receivable, which were not the subject of the Order Granting Relief. Western Capital was the successful bidder at the sale for $250,000.

On May 3, 2010, Western Capital filed a notice of sale (the May Sale) that proposed to sell some of the Debtor's contract rights. The May Sale was postponed several times at the request of the Trustee but was ultimately scheduled for August 11, 2010. On August 4, 2010, the Trustee filed a Motion to Enforce the Automatic Stay Against Western Capital (Motion to Enforce) in order to stop the May Sale.

In his Motion to Enforce, the Trustee contended that the May Sale proposed to sell property that was protected by the automatic stay because the automatic stay never terminated under § 362(h) on *all* of the Collateral, but only terminated on personal property *identified on the Debtor's Schedules*.[8] The Trustee interpreted the Schedules as limiting the Collateral to the Debtor's personal property located at the "Family Compound [at] Yellowstone Mountain Club." Because the contract rights referenced in the May Sale notice were not located at the Yellowstone Mountain Club, the Trustee argued they remained under the protection of the automatic stay.

Western Capital filed an objection to the Motion to Enforce, contending that § 362(h) applied to all the Collateral securing the Loan. On August 10, 2010, the bankruptcy court held a hearing on the Motion to Enforce. It issued a Memorandum of Decision on August 16, 2010, holding that § 362(h) terminated the automatic stay on the Collateral regardless of whether it was listed on the Schedules. An order denying the Motion to Enforce was entered the same day (the

---

[8]The Schedules and Amended Schedules are collectively referred to in this Opinion as the Schedules.

Order Denying Enforcement). On August 30, 2010, the Trustee filed a notice of appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A). We address our jurisdiction under 28 U.S.C. § 158 below.

## III. ISSUE

Whether § 362(h) terminates the automatic stay on all personal property of the estate pledged to secure a scheduled debt or only terminates the stay on personal property specifically identified in a debtor's schedules as securing the debt.

## IV. STANDARDS OF REVIEW

We review issues of statutory construction and conclusions of law, including the bankruptcy court's interpretation of the Bankruptcy Code, de novo. *Am. Express Bank, FSB v. Smith (In re Smith)*, 418 B.R. 359, 364 (9th Cir. BAP 2009); *Dumont v. Ford Motor Credit Co. (In re Dumont)*, 383 B.R. 481, 484 (9th Cir. BAP 2008), *aff'd*, 581 F.3d 1104 (9th Cir. 2009).

## V. DISCUSSION

### A. *Jurisdiction*

We lack jurisdiction over an appeal that is not timely filed. *Saunders v. Band Plus Mortg. Corp. (In re Saunders)*, 31 F.3d 767 (9th Cir. 1994) (requirement of timely notice of appeal is mandatory and jurisdictional). Western Capital contends that this appeal is untimely. *See* Rule 8002 (a notice of appeal must be filed within 14 days of the date of the entry of the judgment or order). According to Western Capital, the Order Granting Relief, entered on October 16, 2009, determined that

the automatic stay terminated under § 362(h) on the Collateral, and therefore, the Trustee should have appealed that order.

[1] Although the bankruptcy court granted relief pursuant to § 362(h), the Trustee's argument that § 362(h) applies only to personal property identified by the Debtor on her Schedules was not at issue. The Trustee did not object to the Stay Relief Motions because the personal property subject to the Stay Relief Motions was either scheduled or the Trustee had determined it was of no value to the estate. When Western Capital refused to postpone the May Sale of personal property, which was not the subject of the Order Granting Relief or among that described on the Schedules, the Trustee filed the Motion to Enforce.[9] The bankruptcy court's subsequent ruling in the Order Denying Enforcement essentially amended the Order Granting Relief and was a final disposition on the question of what property was subject to § 362(h). The Trustee timely filed his notice of appeal within 14 days from the Order Denying Enforcement. As a result, the appeal is timely and we have jurisdiction to address its merits.

B. *Merits*

The Trustee contends that when the Debtor did not file a statement of intention, § 362(h) terminated the automatic stay only on the personal property identified on the Debtor's Schedules as securing Western Capital's claim. According to the Trustee, § 362(h)'s application was limited to personal property located at the Family Compound at Yellowstone Mountain Club because the Debtor's Schedules identified Western Capital's claim as having a value well below the total value of all of the Debtor's personal property and because the

---

[9]We note that the Trustee's position on appeal is somewhat inconsistent with his prior conduct. The March Sale included a sale of some Collateral not identified on the Debtor's Schedules or covered by the Order Granting Relief, but the Trustee did not seek to enforce the stay until the May Sale.

Schedules referenced the "Yellowstone Mountain Club" in the description of Western Capital's security interest.

Admittedly, the description of Western Capital's secured claim, "ALL PERSONAL PROPERTY OWED [sic], FAMILY COMPOUND AT YELLOWSTONE MOUNTAIN CLUB," is unclear. However, as we explain below, the effects of § 362(h) and § 521(a)(2) do not depend on how (or even if) personal property securing a debt is scheduled.

Because this case presents a question of statutory interpretation, "our interpretation of the Bankruptcy Code starts 'where all such inquiries must begin: with the language of the statute itself.' " *Ransom v. FIA Card Servs., N.A. (In re Ransom)*, ___ U.S. ___, 131 S. Ct. 716, 723-24 (2011) *quoting United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

Section 362(h) terminates the automatic stay "with respect to personal property of the estate or of the debtor securing in whole or in part a claim . . . if the debtor fails within the applicable time set by section 521(a)(2) . . . to file timely any statement of intention required under § 521(a)(2)" indicating whether she will surrender or retain such personal property.[10] 11 U.S.C. § 362(h)(1).

---

[10]Section 362(h):

> (1) In a case in which the debtor is an individual, the stay provided by subsection (a) is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, . . . and such personal property shall no longer be property of the estate if the debtor fails within the applicable time set by section 521(a)(2) —
>
> > (A) to file any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender . . . or retain it . . . .
> >
> > (B) to take timely the action specified in such statement . . . .

**[2]** Section 362(h) applies to personal property of the estate securing a claim. "Property of the estate" is defined in § 541(a) as all of a debtor's legal or equitable interests in property, wherever located, as of the commencement of the case, and includes nine non-exclusive subcategories of property. 11 U.S.C. § 541(a)(1)-(a)(9). Nothing in § 541 limits property of the estate to property scheduled by a debtor. Moreover, property of the estate includes non-debtor interests in property recovered or recoverable through the Bankruptcy Code's transfer and lien avoidance provisions. 11 U.S.C. § 541(a)(3),(4); *Owen v. Owen*, 500 U.S. 305, 308 (1991). Property of the estate, therefore, includes property not identified or listed on the bankruptcy schedules.

When language is used in one section of a statute and the same language is used in another section, we "can infer that Congress intended the same meaning." *Consol. Freightways Corp. of Del. v. Aetna, Inc. (In re Consol. Freightways Corp. of Del.)*, 564 F.3d 1161, 1165 (9th Cir. 2009); *N. Sports, Inc. v. Knupfer (In re Wind N' Wave)*, 509 F.3d 938, 944 (9th Cir. 2007) ("identical words used in different parts of the same act are intended to have the same meaning"). We assume, therefore, that when a debtor fails to timely file her statement of intention, § 362(h) terminates the stay on "property of the estate" as defined by § 541.

The Trustee asserts that because § 362(h) refers to § 521(a)(2), there is a requirement that personal property subject to § 362(h) be scheduled. He focuses on the following language of § 521(a)(2) to support his argument: "if an individual debtor's schedule of assets and liabilities includes

---

(2) Paragraph (1) does not apply if the court determines, on the motion of the trustee filed before the expiration of the applicable time set by 521(a)(2), after notice and a hearing, that such personal property is of consequential value or benefit to the estate, . . . .

debts which are secured by property of the estate" then a debtor must timely file a statement of intention with regard to "such property."[11] The Trustee contends that the word "if" is "the most essential part of the statute because it means that section 362(h) does not have any effect unless and until the predicate condition is satisfied: the appearance of property on the schedules."

The language of § 521(a)(2) requires that the secured *debt* be listed but does not require that the property securing the debt be scheduled: "if a debtor's schedule of assets and liabilities includes *debts* secured by property of the estate . . . ." 11 U.S.C. § 521(a)(2) (emphasis added). The reference to "such property" in the statute refers to the "property of the estate" that secures the debt. Where the language is plain and does not lead to absurd or impractical consequences, the words are taken as the final expression of the meaning intended. *In re Dumont*, 581 F.3d at 1111.

[3] The combined effect of §§ 362(h) and 521(a)(2) is to lift the stay and remove personal property from the estate when no timely statement of intention is filed and a trustee fails to timely file a motion to determine the value or benefit of the property. The result may be harsh but is not absurd. *Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (a

---

[11]Section 521(a)

(2) if an individual debtor's schedules of assets and liabilities includes debts which are secured by property of the estate—

(A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court for cause within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property.

plain, non-absurd meaning is enforceable even if outcome is harsh).

Because § 362(h) is not ambiguous and its effect is not absurd, we need not look to legislative history to inform our analysis. *See Joye v. Franchise Tax Bd. (In re Joye)*, 578 F.3d 1070, 1076 (9th Cir. 2009). Even if were we to do so, the legislative history does not support the Trustee's limited interpretation.

Section 362(h) was added to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) as part of the amendments characterized as "Protections for Secured Creditors." H.R. REP. NO. 109-31(I), 109th Cong., 1st Sess. 2005, *reprinted in* 2005 U.S.C.C.A.N. 88, 103. Section 362(h) was intended to provide greater protection to creditors by terminating the automatic stay with respect to personal property of the debtor if the debtor failed to timely reaffirm the underlying obligation or redeem the property. *Id.*; *see also In re Dumont*, 581 F.3d at 1111 (secured creditors have been the subject of particular congressional solicitude in BAPCPA). Under the Trustee's interpretation, secured creditors would not be afforded the protection of the 2005 amendments because the deadlines of §§ 362(h) and 521(a)(2) would never be triggered if a debtor failed to properly describe, or schedule, personal property securing a scheduled debt.

The Trustee asserts that if § 362(h) is interpreted to apply to unscheduled property, it will harm the bankruptcy system because trustees, creditors, and the courts would remain "entirely ignorant of the existence of property that would be removed from the estate." The Trustee argues that trustees would be compelled in every case to move for blanket protection under § 362(h) to "guard against the possibility that some property has been left off the schedules."

The Trustee ignores that §§ 521(a)(2) and 362(h) apply only if the schedules list debts secured by personal property.

As long as a debt is scheduled as secured, it provides notice to other creditors and the trustee that there is a creditor with a security interest in personal property of the estate. If there is a concern about the benefit that property may have for the estate, the trustee has the ability to keep the property protected by filing a motion under § 362(h).[12]

The Trustee also suggests that the failure to adopt his interpretation of § 362(h) will permit debtors and secured creditors to collude to deprive unsecured creditors of valuable assets. We disagree, but even if it were so, there are remedies for such conduct. If a debtor fraudulently completes her schedules, a trustee or creditor may seek to deny her a discharge under § 727(a)(4). Furthermore, if a debtor and a creditor collude to mischaracterize a claim or collateral, they may be subject to prosecution under 18 U.S.C. § 152.

Accordingly, we conclude that the plain language of § 362(h) and § 521(a)(2) does not lead to an absurd result.

---

[12]On appeal, the Trustee urges us to adopt the holding of *Noland v. HSBC Auto Fin., Inc. (In re Baine)*, 393 B.R. 561, 568 (Bankr. S.D. Ohio 2008) that § 362(h)(1)'s removal of property from the estate is tantamount to abandonment because it "divests the estate of all its interests in the property." He contends that because there is a long line of authority holding that a failure to schedule an asset does not result in its abandonment when a case is closed, only scheduled property is subject to § 362(h). We decline to address the Trustee's abandonment argument because it was not squarely raised before the bankruptcy court. *Moldo v. Matsco, Inc. (In re Cybernetic Servs., Inc.)*, 252 F.3d 1039, 1045 n.3 (9th Cir. 2001) (appellate court need not explore ramifications of argument not raised below). While the Trustee argued that it was against public policy to permit unscheduled assets to be removed from the estate, he did not assert that § 362(h) is effectively equivalent to abandonment under § 554. In any event, *In re Baine* is unpersuasive. *See generally*, Neil C. Gordon, *Section 362(h) Does Not Deprive a Trustee of Standing to Avoid a Lien*, 29-Jan. Am. Bankr. Inst. J. 50 (2010); *see also*, 11 U.S.C. § 521(a)(2)(C) (except for § 362(h)(1), a trustee's rights to the property are otherwise unaltered); *Catalano v. Comm'r*, 279 F.3d 682, 687 (9th Cir. 2002) ("[P]roperty is not considered abandoned from the estate unless the procedures specified in § 554 are satisfied.").

Under the unambiguous language of § 362(h), all personal property secured by a scheduled debt is released from the automatic stay if a debtor fails to timely file and comply with her statement of intention.

## VI.  CONCLUSION

For the reasons given above, we AFFIRM.