NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   AZ-12-1544-TaAhJu |
| ) | |
| BRETT GORDON PEKRUL, ) | Bk. No.   11-22774-GBN |
| ) | |
| Debtor. ) | |
| _____) | |
| ) | |
| WEIMAR INVESTMENTS, INC., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| FIRST FINANCIAL BANK, N.A., ) | |
| ) | |
| Appellee. ) | |
| _____) | |

Argued and Submitted on June 21, 2013
at Phoenix, Arizona

Filed - July 22, 2013

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable George B. Nielsen, Jr., Bankruptcy Judge, Presiding

―――――――――――――

Appearances:   Robert P. Bettinger argued for appellant Weimar Investments, Inc.; Andrew V. Hardenbrook of Snell & Wilmer LLP argued for appellee First Financial Bank, N.A.

―――――――――――――

Before:  TAYLOR, AHART,[**] and JURY, Bankruptcy Judges.

―――――――――――――

   [*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

   [**] The Honorable Alan M. Ahart, Bankruptcy Judge for the Central District of California, sitting by designation.

## INTRODUCTION[1]

The bankruptcy court granted a motion brought by First Financial Bank, N.A. ("First Financial") and held Weimar Investments, Inc. ("Weimar") in civil contempt. The bankruptcy court subsequently denied Weimar's motion for reconsideration of the contempt order and then awarded attorneys' fees to First Financial. Weimar appeals from the contempt order, the denial of its motion for reconsideration, and the award of attorneys' fees. We AFFIRM.

## FACTS

### *Pre-Bankruptcy*

In 2005, two borrowers obtained a loan from First Financial's predecessor-in-interest. A deed of trust (the "Deed of Trust") with respect to real property located in Las Vegas, Nevada (the "Property") secured their obligations. The borrowers eventually defaulted, and a trustee's sale was scheduled.

### *The Hammer Bankruptcy*

Weimar apparently was in the foreclosure avoidance business. Just two weeks prior to the scheduled trustee's sale, Weimar recorded a Grant Deed that transferred a 1% interest in the Property from a borrower to John W. Hammer ("Hammer"), a chapter 13 debtor. Hammer, thereafter, added his newly acquired "1/100th" interest in the Property to his Schedule A, and Weimar then contacted the trustee under the Deed of Trust, advised of

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

the transfer and Hammer's bankruptcy, and requested cancellation of the foreclosure sale.  First Financial immediately sought and obtained relief from the automatic stay in Hammer's bankruptcy case.  A trustee's sale was re-scheduled for the following month.

### *Debtor's Chapter 13 Bankruptcy*

On August 9, 2011, Brett Gordon Pekrul ("Debtor") filed a skeletal chapter 13 petition.  On October 18, 2011, Weimar recorded a Grant Deed transferring a 1% interest in the Property to Debtor,[2] who thereafter added the "1/100th" interest in the Property to his Schedule A.  Once again, Weimar contacted the trustee under the Deed of Trust and requested cancellation of the trustee's sale.  And, once again, First Financial sought and obtained emergency stay relief.

### *Rule 2004 Orders and Subpoena*

As a result of Weimar's involvement in the Debtor's bankruptcy case, First Financial sought and obtained an order allowing a Rule 2004 examination of Weimar and requiring the production of documents pursuant to Rule 2004 from Weimar ("Rule 2004 Order").  The Rule 2004 Order established December 23, 2011, as the deadline for Weimar to produce the requested documents.  First Financial's attorney subsequently served Weimar with a subpoena based on the Rule 2004 Order ("Subpoena").

At Weimar's request, First Financial informally extended the

---

[2] Over the next five months, the Debtor amended his Schedule A approximately 12 times.  Each time, he added additional real property based on an "undivided 1/100th" interest therein.

3

deadline to produce the requested documents to January 6, 2012 and then to January 13, 2012. On January 23, 2012, ten days after the second extension date, Weimar finally produced more than 600 pages of documents to First Financial. After review, however, First Financial deemed the production incomplete and so advised Weimar. Weimar then requested a further extension of the production deadline; First Financial agreed.

In connection with this extension, the parties formally stipulated to an extension of the deadline and obtained a bankruptcy court order approving their agreements ("Stipulation Order" and, jointly with the Rule 2004 Order, "Orders"). The Stipulation Order extended the deadline for production to February 2, 2012. It further approved Weimar's agreed submission to bankruptcy court jurisdiction and waiver of any objection to the Rule 2004 Order or Subpoena. Once again, however, Weimar failed to produce documents as required by the Stipulation Order.

At the subsequent Rule 2004 examination, First Financial agreed yet again to extend the document production deadline. But again, Weimar did not produce any additional documents.

In the background of these production issues, Weimar and its President, Michael Kaplan ("Kaplan"), were the subjects of a search and seizure warrant for premises in Tempe, Arizona. While this was a distraction, the issues arose only after Weimar's initial non-compliance.

### *Contempt Order*

Eventually, First Financial moved for an order: (1) holding Weimar in contempt of court; (2) compelling the production of documents; (3) imposing a per diem fine for its noncompliance;

4

and (4) awarding reasonable attorneys' fees and costs (the "Contempt Motion").

At an initial hearing, Weimar's counsel insisted that Kaplan, as Weimar's sole or principal shareholder, be allowed to personally appear and defend and explained that Kaplan's recent brain tumor diagnosis prevented an appearance at the current hearing. He also discussed the ongoing criminal investigation and asserted that Weimar/Kaplan had the right to assert their respective Fifth Amendment rights. As a result of problems with telephone reception for parties appearing telephonically, the bankruptcy court continued the hearing.

At the continued hearing, Weimar raised a new argument, alleging collusion between First Financial and law enforcement agencies; it requested an evidentiary hearing. Weimar further expanded on its Fifth Amendment privilege argument, asserting that it applied because the information sought by First Financial was personal in nature to Kaplan, rather than confined to corporate documents. First Financial argued against these points and, in particular, denied collusion with law enforcement agencies.

At the conclusion of oral argument, the bankruptcy court rejected Weimar's assertion of Fifth Amendment privilege based on Weimar's waiver of any objections to the Rule 2004 Order pursuant to the Stipulation Order and a determination that a corporate entity was not entitled to assert that privilege. The bankruptcy court also emphasized that the pending criminal investigation did not automatically stay discovery proceedings in a bankruptcy case. Thus, the bankruptcy court determined that Weimar

expressly violated the Rule 2004 Order, the Stipulation Order, and the Subpoena. It also required Weimar to produce the remaining requested documents by May 18, 2012, and continued the hearing on the Contempt Motion for status. On May 11, 2012, the bankruptcy court entered an order granting the Contempt Motion ("Contempt Order").

During this time, the bankruptcy court also dismissed with prejudice and closed the Debtor's bankruptcy case. But it specifically retained jurisdiction over the Contempt Motion and related matters.

### *Motion to Reconsider*

On the eve of a continued status hearing, Weimar filed a motion for reconsideration ("Motion to Reconsider"), which it supported with Kaplan's declaration. In these documents, Weimar asserted for the first time that it timely produced approximately 600 pages to First Financial and that neither Weimar, Kaplan, nor any employees possessed other documents responsive to the Orders. It alleged that based on this compliance, contempt did not exist; thus, it requested that the bankruptcy court reverse the Contempt Order. Weimar also asserted that it was entitled to due process rights, including a jury trial and a standard of proof beyond a reasonable doubt. At the status hearing, the bankruptcy court scheduled the matter for argument.

At the subsequent hearing, Weimar reasserted and expanded on its new arguments. It attempted to explain its lapse in failing to immediately advise of its alleged full compliance as a result of a change in counsel. It further asserted that any delay was inadvertent. When the bankruptcy court pointed out that Weimar,

6

as the client, was still responsible for informing First Financial and the bankruptcy court of its compliance, Weimar responded that Kaplan had a brain tumor and then a stroke, which rendered him unavailable to counsel.

At the conclusion of arguments, the bankruptcy court orally ruled and denied the Motion to Reconsider. Applying Civil Rule 59(e), it held that grounds for reconsideration did not exist. The bankruptcy court concluded that First Financial was entitled to compensation. The bankruptcy court entered a minute entry/order denying the Motion to Reconsider on July 17, 2012.

### *Fees Award*

First Financial next submitted an Application for Attorneys' Fees and requested an award of $24,135 for reasonable attorneys' fees and costs incurred in seeking Weimar's compliance with the Orders. Attached was an affidavit from First Financial's counsel and an itemized report of legal services provided with respect to the Rule 2004 Order and related proceedings. First Financial's counsel stated that the itemized legal services were performed by counsel and were actually, reasonably, and necessarily incurred expenses.

At the final hearing on October 10, 2012, Weimar argued that the fees requested were excessive. In response, the bankruptcy court remarked that while the fees tilted toward the higher range, the matters were not necessarily routine, and, therefore, the fees were reasonable. It, thus, allowed the requested fees.

On October 23, 2012, the bankruptcy court entered an order granting the application ("Fees Award"). Weimar timely appealed.

7

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (b)(2)(A). As discussed below, we have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

Did the bankruptcy court err in: (1) finding Weimar in civil contempt; (2) denying the Motion to Reconsider; or (3) awarding attorneys' fees to First Financial?

**STANDARD OF REVIEW**

We review the following decisions of the bankruptcy court for abuse of discretion: imposition of civil contempt, denial of a motion for reconsideration, and sanctions for civil contempt under § 105(a). Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (imposing civil contempt); Fadel v. DCB United LLC (In re Fadel), 492 B.R. 1, 9 (9th Cir. BAP 2013) (denying motion for reconsideration); Rosales v. Wallace (In re Wallace), 490 B.R. 898, 904-05 (9th Cir. BAP 2013) (awarding sanctions for civil contempt). The underlying factual findings are reviewed for clear error. In re Dyer, 322 F.3d at 1191.

An evaluation of abuse of discretion is a two-prong test; first, we determine de novo whether the bankruptcy court identified the correct legal rule for application. See United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (en banc). If so, we review whether the bankruptcy court's application of the legal rule was clearly erroneous; we will affirm unless its findings were illogical, implausible, or without support in the record. See id. at 1262.

8

We may affirm on any basis on the record. <u>Caviata Attached Homes, LLC v. U.S. Bank, N.A. (In re Caviata Attached Homes, LLC)</u>, 481 B.R. 34, 44 (9th Cir. BAP 2012).

**DISCUSSION**

**A.   The scope of the appeal**.

Following Weimar's notice of appeal, First Financial moved to dismiss the appeal as untimely to the extent Weimar sought review of the Contempt Order or denial of the Motion to Reconsider.  A motions panel denied this motion, as it determined that the Contempt Order was not final and appealable until entry of an order awarding attorneys' fees as a sanction. <u>See</u> <u>Weyerhaeuser Co. v. Int'l Longshoremen's & Warehousemen's Union</u>, 733 F.2d 645, 645 (9th Cir. 1984); <u>Donovan v. Mazzola</u>, 761 F.2d 1411, 1417 (9th Cir. 1985).  It further determined that the Contempt Order and denial of the Motion to Reconsider merged into the final Fees Award and, thus, are subject to this appeal. <u>See</u> <u>Am. Ironworks & Erectors, Inc. v. N. Am. Const. Corp.</u>, 248 F.3d 892, 898-99 (9th Cir. 2001).

We agree with the motions panel and conclude that the scope of this appeal includes the Contempt Order and the denial of the Motion to Reconsider.

**B.   The bankruptcy court did not err in finding Weimar in civil contempt.**

The bankruptcy court found Weimar in contempt based on the latter's failure to comply with the Orders and Subpoena.  First Financial's Contempt Motion requested relief pursuant to § 105(a) which provides bankruptcy courts with civil contempt authority. <u>In re Dyer</u>, 322 F.3d at 1192.  We agree that the bankruptcy court

9

granted Financial First's requested relief pursuant to this authority, rather than as a discovery sanction.

In determining whether a party is in civil contempt, the movant bears the burden of showing by clear and convincing evidence that the contemnor violated a specific and definite order of the bankruptcy court. Id. at 1190-91. If the movant meets this showing, the burden shifts to the contemnor to explain its inability to comply. In re Wallace, 490 B.R. at 905. A party who fails to take reasonable steps within its power to insure compliance with a bankruptcy court's order in turn fails to act as ordered by the court. Id.

The record adequately supports the bankruptcy court's findings. The bankruptcy court entered two orders: the Rule 2004 Order and the Stipulation Order. Both were specific and definite orders of the bankruptcy court. First Financial's counsel served the Subpoena based on the bankruptcy court's Rule 2004 Order. Weimar received extensions – four times – of the deadline to produce the requested documents. Weimar never denied that it violated the bankruptcy court's specific orders by failing to timely produce documents. Instead, it belatedly tried to defend itself by asserting objections - objections explicitly waived in the Stipulation Order.

Weimar's argument that a criminal investigation involving Kaplan armed it with a good faith basis to essentially disregard the Orders and the Subpoena and that the Contempt Motion implicated various constitutional rights (including its right to due process and the privilege against self-incrimination, even if not waived) lack merit.

10

First, the criminal investigation came to light only after Weimar's initial act of contempt.

Second, the Fifth Amendment privilege against self-incrimination does not extend to corporate entities in civil proceedings. See Braswell v. United States, 487 U.S. 99, 105 (1988) (privilege against self incrimination protects only natural persons, not corporations). By its own terms, the Rule 2004 Order compelled the production of documents by Weimar, not Kaplan in his personal capacity.

Third, due process in a civil contempt proceeding solely requires adequate notice and an opportunity to be heard. See Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005). Contrary to Weimar's arguments, a party possibly subject to civil contempt is "not entitled to the full panoply of procedural protections that are normally reserved for defendants charged with a criminal offense, such as an independent prosecutor, proof beyond a reasonable doubt, and a jury trial." Id. It is beyond dispute here both that Weimar had notice of the contempt hearing and that the bankruptcy court provided it with several opportunities to appear and be heard.

Fourth, a criminal investigation does not stay a civil proceeding. See Fed. Sav. & Loan Ins. Corp. v. Molinaro, 889 F.2d 899, 902 (9th Cir. 1989) (no constitutional right to a stay of civil proceedings pending the disposition of a parallel criminal proceeding). To the extent a party desires such a stay, it must affirmatively seek and obtain such relief. See id. But a party may never unilaterally decide that it simply will not comply with a court order.

11

Weimar also alleges that the bankruptcy court's characterizations of the criminal investigation and its failure to conduct an evidentiary hearing on the relationship between First Financial and law enforcement agencies were in error. We disagree. While Kaplan is Weimar's president, Kaplan and Weimar are not synonymous entities. Similarly, Weimar's assertions as to an alleged conspiracy between First Financial and law enforcement agencies are irrelevant, as they do not justify Weimar's complete disregard of a direct court order.

Finally, the record shows that Weimar's failure to timely produce documents pursuant to the Orders preceded Kaplan's illness by three or four months. Similarly, the criminal investigation surfaced approximately three months after entry of the Rule 2004 Order. Thus, these alleged excuses for delay are not adequate to excuse Weimar's contempt.

In sum, Weimar was subject to the Rule 2004 Order, the Stipulation Order, and the Subpoena. It sought and obtained two informal extensions of the Rule 2004 Order, then belatedly produced documents to First Financial. When First Financial challenged the completeness of this production, Weimar requested yet another extension and agreed to the Stipulation Order. At a hearing, the bankruptcy court again ordered Weimar to produce additional documents on or before May 18, 2012. Weimar again ignored the deadline established by the bankruptcy court.

On this record, the bankruptcy court's findings were not illogical, implausible, or without support from the record. Therefore, based on the evidence before it, the bankruptcy court did not abuse its discretion in finding Weimar in civil contempt.

12

**C. The bankruptcy court did not err in denying the Motion to Reconsider.**

Weimar also asserts that the bankruptcy court erred in denying its Motion to Reconsider. A court treats a "motion for reconsideration" as a motion to alter or amend a judgment or order under Civil Rule 59(e) (incorporated into bankruptcy cases by Rule 9023), if filed within 14[3] days of entry of the order. See Am. Ironworks & Erectors, Inc., 248 F.3d at 898-99. Otherwise, the bankruptcy court treats the motion as one for relief from a judgment or order under Civil Rule 60(b) (incorporated into bankruptcy cases by Rule 9024). Id.

Here, Weimar moved for reconsideration exactly one month after the bankruptcy court entered the Contempt Order. Thus, the Motion to Reconsider was subject to Civil Rule 60(b). The bankruptcy court, however, referred to Civil Rule 59(e) as the basis for denial. Consequently, the bankruptcy court did not apply the correct legal standard. We conclude, however, that this error was harmless; there was no basis for reconsideration under either of Civil Rules 59(e) or 60(b). See, e.g., Fed. R. Civ. P. 61 (incorporated into bankruptcy proceedings by Rule 9005).

A court correctly denies a motion for reconsideration where the movant merely rehashes arguments already presented or asserts additional theories that could have been argued in connection with the initial determination. See In re Fadel, 492 B.R. at 18.

---

[3] Although Civil Rule 59(e) provides for 28 days, Rule 9023 expressly limits the timing to 14 days in bankruptcy cases.

13

The grounds for reconsideration under Civil Rule 60(b) are limited to six identified grounds for relief, including mistake. See Fed. R. Civ. P. 60(b)(1)-(6). For the purposes of Civil Rule 60(b)(1), mistake generally entails "circumstance[s] where there is some reason for confusion or misunderstanding by the parties." In re Walker, 332 B.R. 820, 829 (Bankr. D. Nev. 2005); see also Latshaw v. Trainer Wortham & Co., Inc., 452 F.3d 1097, 1101 (9th Cir. 2006) (party is not "released from a poor litigation decision made because of inaccurate information or advice . . . .").

Weimar predominantly based its request for reconsideration on its alleged mistake in failing to understand and communicate that the initial (untimely) production was complete. The bankruptcy court found that Weimar bore responsibility for informing its counsel that it provided all the documents responsive to the Orders and Subpoena. The bankruptcy court could not comprehend, based on the evidence before it, how Weimar only belatedly discovered that it had produced all of the responsive documents. It expressly stated that Weimar's own actions (or inaction) resulted in the finding of contempt and, thus, that Weimar failed to establish that reconsideration was warranted.

The substance of the bankruptcy court's ruling supports denial of reconsideration based on "mistake" under Civil Rule 60(b)(1). Implicit in its ruling is its disbelief that Weimar's belated assertion resulted from legitimate confusion or misunderstanding prior to the initial hearing. The bankruptcy court did not err in denying reconsideration where Weimar had the

14

ability to raise the issue in its initial opposition. <u>See</u> <u>In re Fadel</u>, 492 B.R. at 18.

Further, Weimar's alleged mistake is an inadequate basis for reconsideration even if newly discovered. This mistake never explains why the initial document production was late (and consequently, in clear violation of the Orders).

Finally, the bankruptcy court did not err in disregarding this basis for reconsideration where the record is replete with instances of Weimar's delay and actions that are inconsistent with its subsequent position. Weimar failed to respond to the first scheduled deadline under the Rule 2004 Order and Subpoena; it was ten days late in responding to the second informally established deadline; it never responded to the third scheduled deadline under the Stipulation Order or the fourth informally established deadline; and it failed to respond by the May 18, 2012 deadline, notwithstanding the bankruptcy court's express instruction at the May 4, 2012 hearing.

Weimar continuously violated the Orders. Its inaction remains unexplained, and its "mistake" as to the scope of the initial production, even if legitimate, was not objectively reasonable and resulted in litigation decisions that wasted judicial resources, harmed First Financial, and compounded the existing contempt. The bankruptcy court's reasoning, even if erroneously based on Civil Rule 59, supports the conclusion that Weimar's "mistake" does not justify relief from the Contempt Order under Civil Rule 60(b)(1).

In argument in connection with reconsideration, Weimar also raised for the first time the assertion that its retention of new

15

counsel caused or contributed to its failure to timely explain that the initial production was complete. The bankruptcy court did not err in rejecting this excuse. Weimar obtained new counsel approximately two months after entry of the Rule 2004 Order.[4] In other words, these events all followed the Rule 2004 Order production date by several months and, thus, fail to adequately explain Weimar's initial untimely production, its subsequent failures to produce documents, or its initial admissions that additional documents existed.

On appeal, it also now argues that a prior counsel's inept representation constituted excusable neglect under Civil Rule 60(b)(1). This argument was not raised below, and, thus, we will not consider it on appeal. See Samson v. W. Capital Partners, LLC (In re Blixseth), 684 F.3d 865, 872 n.12 (9th Cir. 2012) (appellate court may decline to address argument not raised before bankruptcy court) (citation omitted). Similarly, we reject its other arguments raised only on appeal in connection with reconsideration. Finally, we also reject its arguments to the extent they merely regurgitate arguments already made in connection with the Contempt Motion. See In re Fadel, 492 B.R.

---

[4] Moreover, to the extent Weimar argues that its counsel's "mistakes" are to blame, its argument is similarly unavailing. In Latshaw, the Ninth Circuit stated that, "[f]or purposes of [Civil Rule 60](b)(1), parties [are] bound by and accountable for the deliberate actions of themselves and their chosen counsel. This includes not only an innocent, albeit careless or negligent, attorney mistake, but also intentional attorney misconduct. Such mistakes are more appropriately addressed through malpractice claims." 452 F.3d at 1101. Thus, Weimar cannot now contend that its counsel's acts somehow constituted "mistake."

16

at 18.

We conclude that the substance of the bankruptcy court's ruling supports denial of reconsideration under Civil Rule 60(b)(1). Thus, the bankruptcy court did not abuse its discretion in denying Weimar's Motion to Reconsider.

**D. The bankruptcy court did not err in awarding attorneys' fees based on Weimar's contempt.**

Finally, Weimar argues that the bankruptcy court erred in awarding attorneys' fees pursuant to the Contempt Order.

Sanctions for civil contempt may be imposed based on one or both of the following: (1) to compel or coerce obedience with respect to a court order; or (2) to compensate the opposing party for damages resulting from the contemnor's noncompliance. Shuffler v. Heritage Bank, 720 F.2d 1141, 1147 (9th Cir. 1983); see also In re Dyer, 322 F.3d at 1195 ("[A]ttorneys' fees are an appropriate component of a civil contempt award.").

Here, the bankruptcy court awarded First Financial attorneys' fees in the amount of $24,135. Based on the evidence before it, the bankruptcy court found that the fees requested were reasonable. In doing so, it considered the amount of the fees requested and the scope of work as reflected in counsel's timesheets. It also noted that Weimar filed an untimely opposition and failed to present a specific, cognizable objection to the fee application. On this record, the bankruptcy court's findings were not illogical, implausible, or without support from the record. Thus, it did not abuse its discretion in awarding the fees as compensatory damages.

17

**CONCLUSION**

Based on the foregoing, we AFFIRM.

18